## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**PAUL BOUDREAUX**

**VERSUS**

**ST. MARTIN PARISH SHERIFF BECKETT BREAUX, SMPSO DEPUTY CLAYGUS HERRING, SMPSO CAPTAIN CAROL KNOTT, SMPSO CORPORAL DOUGLAS HEATON, SMPSO DEPUTY CLAYTON ALEXANDER, JR., SMPSO DEPUTY KILAND CARMOUCHE, UNITED WATER SYSTEM, INC., BARABARA HEBERT, LORNA MILLS, LYDIA KNOTT, JOANNE ARTIGUE, MILTON FREDERICK, MONICA MECHE, TERRY BEGNAUD, and JOSEPH TRAHAN**

**CIVIL ACTION NO.:** _____

**JUDGE:** _____

**MAG. JUDGE:** _____

_____

### COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF
_____

NOW COMES, PAUL BOUDREAUX, a person of the full age of majority, domiciled in St. Martin Parish, (hereinafter collectively, "Plaintiff"), who with respect represents and further alleges that:

1.

Made defendants in this matter are:

a.   **ST. MARTIN PARISH SHERIFF BECKETT BREAUX** (hereinafter "SHERIFF BREAUX") in both his individual and official capacities as duly elected sheriff of the Parish of St. Martin, La. and as chief administrator and executive for the ST. MARTIN PARISH SHERIFF's OFFICE ("SMPSO"), in which capacity he was serving at the time of the events alleged herein and giving rise to this litigation. SHERIFF BREAUX can be served at 400 Saint Martin Street, Saint Martinville, LA 70582;

b.   **SMPSO DEPUTY CLAYGUS HERRING** (hereinafter, "DEPUTY HERRING") in his individual and official capacities as a deputy for the St. Martin Parish Sheriff's Office who can be served at his place of employment, 400 Saint

Martin Street, Saint Martinville, LA 70582;

c.  **SMPSO CAPTAIN CAROL KNOTT** (hereinafter, "CAPTAIN KNOTT") in his individual and official capacities as a deputy for the St. Martin Parish Sheriff's Office who can be served at his place of employment, 400 Saint Martin Street, Saint Martinville, LA 70582;

d.  **SMPSO CORPORAL DOUGLAS HEATON** (hereinafter, "CORPORAL HEATON") in his individual and official capacities as a deputy for the St. Martin Parish Sheriff's Office who can be served at his place of employment, 400 Saint Martin Street, Saint Martinville, LA 70582;

e.  **SMPSO DEPUTY CLAYTON ALEXANDER, JR.** (hereinafter, "DEPUTY ALEXANDER") in his individual and official capacities as a deputy for the St. Martin Parish Sheriff's Office who can be served at his place of employment, 400 Saint Martin Street, Saint Martinville, LA 70582;

f.  **SMPSO DEPUTY KILAND CARMOUCHE** (hereinafter, "DEPUTY CARMOUCHE") in his individual and official capacities as a deputy for the St. Martin Parish Sheriff's Office who can be served at his place of employment, 400 Saint Martin Street, Saint Martinville, LA 70582;

g.  **UNITED WATER SYSTEM, INC.,** a Louisiana non-profit corporation, domiciled in St. Martin Parish, La, authorized to do and doing business in the State of Louisiana, and who may be served through its designated agent for service of process, Barbara Hebert, 1064 Lynn Hardy Rd. Arnaudville, LA 70512;

h.  **BARBARA HEBERT,** an individual of the age of majority, domiciled in St. Martin Parish, in both her individual and official capacities as a member of the Board of Directors and as President of United Water System, Inc., who may be served at 1064 Lynn Hardy Rd. Arnaudville, LA 70512;

i.  **LORNA MILLS,** an individual of the age of majority, domiciled in St. Martin Parish, in both her individual and official capacities as a member of the Board of Directors and as Vice-President of United Water System, Inc., who may be served at 1277 Main Hwy. Arnaudville, LA 70512;

j.  **LYDIA KNOTT,** an individual of the age of majority, domiciled in St. Martin Parish, in both her individual and official capacities as a member of the Board of Directors of United Water System, Inc., who may be served at 150 Portage Levee Road, Arnaudville, LA 70512;

k.  **JOANNE ARTIGUE,** an individual of the age of majority, domiciled in St. Martin Parish, in both her individual and official capacities as a member of the Board of Directors and as Secretary of United Water System, Inc., who may be served at 1041 Cecil Drive, Breaux Bridge, LA 70517;

l.    **MILTON FREDERICK,** an individual of the age of majority, domiciled in St. Martin Parish, in both her individual and official capacities as a member of the Board of Directors of United Water System, Inc., who may be served at 182 Allen Road, Arnaudville, LA 70512;

m.    **MONICA MECHE,** an individual of the age of majority, domiciled in St. Martin Parish, in both her individual and official capacities as a member of the Board of Directors of United Water System, Inc., who may be served at 1141 Bushville Hwy., Arnaudville, LA 70512;

n.    **TERRY BEGNAUD,** an individual of the age of majority, domiciled in St. Martin Parish, in both his individual and official capacities as a member of the Board of Directors of United Water System, Inc., who may be served at 1125 Simon Angell Road, Arnaudville, LA 70512; and

o.    **JOSEPH TRAHAN**, an individual of the age of majority, domiciled in St. Martin Parish, in both his individual and official capacities as an employee and agent of United Water System, Inc., who may be served at his place of employment, United Water System, 1004 Twin Oaks Dr., Arnaudville, LA 70512.

2.

Unless otherwise expressly stated herein, the term "Defendants" shall refer to all above enumerated Defendants collectively. Unless otherwise expressly stated herein, SHERIFF BREAUX, DEPUTY HERRING, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and SMPSO DEPUTY CARMOUCHE may from time to time be referred to collectively as the "SMPSO Defendants". Unless otherwise expressly stated herein, UNITED WATER SYSTEM, INC., BARABARA HEBERT, LORNA MILLS, LYDIA KNOTT, JOANNE ARTIGUE, MILTON FREDERICK, MONICA MECHE, TERRY BEGNAUD, and JOSEPH TRAHAN may from time to time be referred to collectively as the "UWS Defendants".

3.

SHERIFF BREAUX in his official capacity as the sitting Sheriff for the Parish of St. Martin, LA is vicariously responsible for the negligence, intentional acts and omissions, and violations of the Plaintiff's rights under the color of state law of the Defendants, DEPUTY

HERRING, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and SMPSO DEPUTY CARMOUCHE, and other unidentified employees of the St. Martin Parish Sheriff's Office under the doctrine of *Respondeat Superior* for the reasons that follow. SHERIFF BREAUX is also individually liable for his own negligence, intentional acts and omissions, and violations of the Plaintiff's rights under the color of state law. At all times pertinent hereto, the actions of his subordinates were taken under direct orders from SHERIFF BREAUX himself. Further, all UWS Defendants conspired with or acted in concert with the SMPSO Defendants, including SHERIFF BREAUX, to deprive the Plaintiff of his federal rights, acting under color of law.

4.

This Honorable Court has federal question jurisdiction over the subject matter of this claim pursuant to 28 USC §§ 1331 and 1343. The substantive claims in this action arise under 42 U.S.C. §§ 1983, 1985, 1986, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the US Constitution.

5.

This Court further has supplemental and pendent jurisdiction over all state law claims asserted herein pursuant to 28 USC § 1367 (a).

6.

Plaintiff brings this civil rights action to redress the deprivation under color of state law of rights, privileges and immunities secured him by provisions of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 3, 4, 5, 6, 7, 9, and 13 of the Louisiana Constitution. Plaintiff asserts claims for First Amendment Retaliation against all Defendants herein.

7.

Venue is proper with this Honorable Court as at all material times, the events giving rise to this litigation occurred in St. Martin Parish, which is within the territorial jurisdiction of this District.

8.

SHERIFF BREAUX was duly elected as the Sheriff of St. Martin Parish by the citizens of that parish, and each of the remaining SMPSO Defendants were duly deputized by and under SHERIFF BREAUX. Upon taking office, SHERIFF BREAUX and each SMPSO Defendant took an oath of office and swore to uphold the US Constitution, the Louisiana Constitution, and all federal and state laws.

9.

UNITED WATER SYSTEM, INC. is a Louisiana non-profit corporation formed under Chapter 2 Title 12, Louisiana Revised Statues; R.S. 12:201, et seq. which acts as a small cooperative formed by its member-patrons for the purposes of providing drinking water to its member-patrons. UNITED WATER SYSTEM is organized as a 501(c)(12) Cooperative under federal taxing regulations. Plaintiff, PAUL BOUDREAUX, is a member-patron of UNITED WATER SYSTEM, by virtue of living within the territorial supply area of the system, receiving his drinking water therefrom, and having been issued a certificate of membership in connection therewith.

10.

As a member-patron of UNITED WATER SYSTEM, Plaintiff is entitled by law to participate in the cooperative's management. As he gets services from the cooperative, with or

for whom the cooperative does business on a cooperative basis, Plaintiff is also a patron of the system. As a member patron, PAUL BOUDREAUX is also eligible to apply and/or campaign to be elected and seated on the Board and/or serve as an officer of UNITED WATER SYSTEM.

11.

Indeed, UNITED WATER SYSTEM's by-laws which were in effect at all times pertinent expressly provided its member-patrons, such as the Plaintiff with the right to attend and participate in all monthly Board Meetings and to campaign and run for election to a board seat or serve as an officer of the System. UNITED WATER SYSTEM encouraged and invited all member-patrons to attend and participate in the monthly Board meetings by providing a form to any member-patron, inviting same to provide any written questions/concerns to the Board ahead of a monthly board meeting, so that the questions could be addressed by the Board. The member-patrons were also afforded five minutes of speaking time at the Board Meetings to address their questions/concerns to the Board in an open and public forum available to all interested. Under State law, the meetings were also subject to the Open Meetings laws, La. R.S. 42:11-28. At all times pertinent, UWS and its individual board members made defendants herein knew that its board meetings were open to attendance and participation by member/patrons under the foregoing.

12.

As a 501(c)(12) Cooperative, UNITED WATER SYSTEM must adhere to three basic principles or requirements: (1) democratic control by its member-patrons; (2) vesting in and allocating among its member-patrons all excess operating revenues over the expenses incurred to generate the revenues; and (3) subordination of capital. The democratic control requirement assures that member-patrons participating in the cooperative endeavor to remain in control of the

501(c)(12) cooperative. A cooperative satisfies this by periodically holding democratically conducted meetings, with members, each with one vote, electing officers to operate the organization.

13.

On information and belief, UNITED WATER SYSTEM provides drinking water to an estimated 1,450 total service connections (as reported by UNITED WATER SYSTEM), resulting in a "derived total population" of approximately 4,350 individuals who receive and utilize UNITED WATER SYSTEM's water on a daily basis. Therefore, in the community of Arnaudville, UNITED WATER SYSTEM's regular board meetings are a public forum and the quality of the community's drinking water is a public matter, issue, or matter of public concern. All speech pertaining to these matters of public concern which takes place at these meetings (public forum) is thus federally protected speech under the First Amendment of the US Constitution. Under State law, the meetings were also subject to the Open Meetings laws, La. R.S. 42:11-28 as well as public records laws, La. R.S. 44:1. At all times pertinent, UWS and its individual board members made defendants herein knew that its board meetings were open to attendance and participation by member/patrons under the foregoing.

14.

At all times pertinent, all Defendants knew that the rights of member-patrons to address the Board in the public forum, to attend board meetings, and to attempt to partake in the leadership of the system through the democratic election process, were federally protected First Amendment rights. As detailed herein, all Defendants nonetheless conspired and acted in concert with one another under color of state law to restrain, prohibit, and limit the Plaintiff, as well as other concerned member-patrons' exercise of these rights, particularly in concern with issues of

drinking water quality. In Plaintiff's case, all Defendants also conspired with one another and acted in concert together under color of state law to engage in retaliation against Plaintiff for his past exercise of his First Amendment Rights. Lastly, all Defendants conspired and acted in concert with one another under color of state law to place a prior restraint on Plaintiff's free speech and utilized unlawful and unconstitutional means of prohibiting the exercise of those rights indefinitely.

15.

In recent years, the member-patrons of UNITED WATER SYSTEM, including the Plaintiff, have grown increasingly frustrated with the quality of drinking water the system has provided. In addition to the often discolored and foul-smelling water received, member-patrons have faced regular pressure drops, total loss of supply, and boil advisories. In addition, UNITED WATER SYSTEM has been found to be regularly out of compliance with many federal and state drinking water regulations.

16.

As a result, many of the member-patrons of the system, including the Plaintiff, began to take active interest in the operation of the system, regularly attending board meetings, formally offering questions/ concerns, and public discussion at the meetings, and otherwise attempting to get involved in such a way as to improve the quality of water being supplied by their cooperative, UNITED WATER SYSTEM.

17.

As a concerned citizen of Arnaudville, La, and as a member-patron of UNITED WATER SYSTEM, Plaintiff organized with other concerned citizens/ member-patrons and together initiated an effort to legally and democratically take action under the system's by-laws to address

drinking water quality in the community served by UNITED WATER SYSTEM.

18.

In the summer of 2022, Plaintiff campaigned among the member-patrons of the System to be elected to serve on the Board at the System's annual membership meeting in September of 2022.

19.

At each monthly Board meeting, Plaintiff was in attendance with other concerned member-patrons, regularly addressing concerns to the Board, both as an individual and on behalf of many others who could not regularly attend.

20.

Plaintiff and others also began to film the Board Meetings so that the meetings could be broadcast to the thousands of member-patrons who were deeply interested in their drinking water quality but could not attend the meetings regularly due to work, family, time constraints, etc. Plaintiff, and others, were at all times respectful and acted with the intent of generating transparency for the entire membership of the system.

21.

Plaintiff and others generated a social media page, open to all member-patrons and dedicated to sharing the information gleaned at the board meetings, broadcast the film of the meetings, and openly discuss, share, debate, and document ongoing issues with drinking water, in real time. Plaintiff and others also asked questions of the Board and reported the Board's responses to the community of members via the social media account. In this sense, Plaintiff acted in the role of the press by collecting information for public consumption and disseminating and reporting same to the interested membership of the water system.

22.

The System itself had no means of broadcasting information regarding its management of the community's drinking water, nor did its board members wish to do so. For many member-patrons, the films, reports, and social media page provided by the Plaintiff and others were the only sources of information regarding the management of their drinking water system they had access to.

23.

Frustrations in the community of member-patrons over the System's drinking water quality continued to grow, and many grievances began to emerge in the community about the Board's actions and inactions. Many grievances bubbled over into social media and grievances were aired at board meetings by many member-patrons.

24.

In this atmosphere, Plaintiff and another emerged as candidates for separate Board seats at its annual membership meeting set to take place in September, 2022. The two campaigned together and with the assistance of fellow concerned members, collected proxy votes and appeared at the meeting to present the votes.

25.

Under the System's By-laws, a certain percentage of the member-patrons were required to vote their intent to propose new board members. If the appropriate percentage of membership cast votes to seat new board members, an election would occur for the Board seats at the annual membership meeting.

26.

Plaintiff and his supporters requested from UWS the total number of member-patrons

from the System, so that they would know the number of votes necessary to invoke an election (being a percentage of the total per the by-laws). The Board never provided any reliable figure, largely due to poor record keeping at the System, but also in an attempt to hinder an election and campaign by Plaintiff.

27.

Notwithstanding, and by virtue of their own research, Plaintiff, his running mate, and their supporters calculated and set out to obtain what they believed were sufficient votes to trigger an election for the Board seats, obtaining many more than they believed were necessary to provide a buffer. Believing that they had secured the appropriate percentage of votes, Plaintiff and his running mate presented same to the Board at the appropriate time.

28.

Upon presentation of the votes, the Board claimed that there were hundreds of discrepancies in the proxies submitted and that there was an insufficient number of votes to trigger the election. The Board failed to state what the total number of member-patrons was (thereby failing to even provide a target percentage to trigger the election), gave no specific information about why many of the proxies were purportedly defective, and gave no specific details about its determination, and summarily refused to permit the election, thereby preventing Plaintiff and his running mate from even standing for an election.

29.

Despite the disappointment in the election attempt, the Plaintiff and his supporters continued to remain active and engaged in trying to effect change in the management of the System to improve drinking water quality for the community.

30.

Plaintiff and other member-patrons continued to attend board meetings, address questions and grievances on behalf of themselves and others, and film and broadcast the meetings to the rest of the membership through social media.

31.

On November 17, 2022, Plaintiff and other interested member-patrons attended the monthly board meeting as usual. Per the System's policy, Plaintiff had submitted written questions and issues to the Board over seven days before the meeting using the System's "Board Meeting Public Appearance Form."

32.

At the meeting on November 17, 2022, the Board announced that it had taken a vote at some non-descript time in the past (unbeknownst to the membership of the System) to implement a new rule at the System, that attendees would no longer be able to film the meeting. This was the first time the Board had ever taken this position. To Plaintiff's knowledge, no formal public Board vote to that effect had ever occurred in the past, nor had any vote to that effect occurred the night of the meeting.

33.

Plaintiff, and others interested, peacefully continued to film, remaining determined to continue to promote transparency and to be able to broadcast the meeting to the community.

34.

When they continued to film, the Board's attorney, Dean Guidry, admonished the attendees and advised that law enforcement would be called if they did not stop filming.

35.

The Plaintiff and others were undeterred, exercising their First Amendment rights to broadcast information to the community, so the attorney contacted the St. Martin Parish Sheriff's department to report a "disturbance." When the SMPSO Deputy arrived, the Board attorney claimed that the Board had voted to prohibit filming, that the meeting was "private and anyone could be told to leave", that several members in attendance, including the Plaintiff, were continuing to film, and requested that they be "thrown out if they continued to film."

36.

The investigating deputy then spoke with the Plaintiff who correctly noted that the meeting was a "co-op open forum meeting" and that filming had never been a problem until he and other members began asking questions about the management of the system.

37.

The deputy correctly determined, and thus advised both the Board and the attendees, including Plaintiff, that he could not stop the filming and that no one was disturbing the meeting, only filming it peacefully. The Deputy correctly took no lawful action against anyone present at the meeting and left the meeting.

38.

At some point after the foregoing episode, confounded by the inability to prohibit Plaintiff and others from filming at the Board meetings or have the Plaintiff and others removed from the meetings, the individual members of the Board of UWS conspired with one another and planned a scheme to prevent the Plaintiff from continuing to engage in his efforts described above- attending meetings, speaking, questioning, and addressing the Board, filming and broadcasting the meetings, etc. The plan was aimed at silencing the Plaintiff, preventing him

from exercising his First Amendments Rights, preventing him from seeking office on the Board, and to retaliate against him for his past exercise of such rights.

39.

The scheme, as discussed below, would require assistance from local law enforcement, thus, all or several of the UWS Defendants (with full knowledge of the others and in accordance with their jointly contrived scheme) contacted SHERIFF BREAUX, directly or indirectly, and or CAPTAIN KNOTT for assistance in the scheme. As discussed below, the scheme resulted in an agreement between the UWS Defendants and the SMPSO Defendants wherein the UWS Defendants would notify the Plaintiff that he was no longer permitted on UWS property, and if he continued to come to the property, the SMPSO Defendants would utilize their police powers to either prohibit his entry on the property, or if necessary, institute criminal process against the Plaintiff. All Defendants involved knew there was no legitimate reason for the Plaintiff to be prohibited from entering the property and all knew and desired that such prohibition would prevent Plaintiff from exercising his First Amendments Rights, prevent him from seeking office on the Board, and otherwise retaliate against him for his past exercise of such rights. As such, the UWS Defendants as private actors were willful participants in joint activity with the SMPSO Defendants as the state or its agents in forming this agreement and playing their respective parts in same all with the intent and desire to deprive the Plaintiff of his First Amendment Rights. All knew that the acts taken in connection with the agreement were unlawful and were intentionally designed to deprive the Plaintiff of his Fist Amendment Rights.

40.

Two months later, in early January of 2023, Plaintiff submitted a "Board Meeting Public Appearance Form" with questions and issues he wished to bring up to the Board at its monthly

meeting scheduled for January 19, 2023.  Within a day or two after submitting the form, on

January 10, 2023, Defendant, JOSEPH TRAHAN, an employee of the UNITED WATER

SYSTEM, in accordance with the scheme and agreement between all Defendants referenced

above,  arrived at the Plaintiff's home in Arnaudville, flanked by a second UWS employee.

41.

In accordance with the scheme and agreement between all Defendants referenced above,

JOSEPH TRAHAN advised the Plaintiff that he was there on behalf of the UWS Board to

"serve" Plaintiff with papers from the Board. TRAHAN then handed the Plaintiff a letter signed

by BARBARA HEBERT as President of UWS, and on behalf of the entire Board of UWS. The

letter briefly stated:

> "On behalf of the Board of Directors, please be advised you are
> hereby prohibited from entering upon the property of United Water
> Systems, Inc. located at 1004 Twin Oaks Drive, Arnaudville,
> Louisiana."

JOSEPH TRAHAN is the plant and systems manager for UWS. He is not a process server, is not

in law enforcement, and has not official authorization authorizing him to "serve" any documents

upon anyone. Moreover, the letter was nothing more than correspondence. It fell short of any

form of Due Process.

42.

The letter provided no rhyme or reason for why the Plaintiff had been prohibited from the

premises. At all times pertinent, the Plaintiff had never engaged in any threatening, dangerous, or

disruptive behavior, but merely sought to vigorously address his, and many others' concerns over

drinking water quality with UWS through its Board. At all times pertinent, Plaintiff observed all

formalities of the Board meetings such as but not limited to timely submitting written questions

prior to the meetings, observing the time limit to speak publicly to the Board, and otherwise

respectfully observing, recording, and broadcasting each meeting.

43.

This letter was intended to intimidate, the Plaintiff, prohibit him from engaging in the public square over a critical matter, his community's drinking water supply, and from otherwise exercising his First Amendment Rights, all in accordance with the scheme and agreement between all Defendants referenced above. This was also done in a deliberate attempt to convey the message to the community at large that those who would oppose or seek redress against the UWS Board would face consequences and retribution for their actions. All UWS Defendants involved were all aware of and consciously desired and intended this result. Each Board Member, BARBARA HEBERT, LORNA MILLS, LYDIA KNOTT, JOANNE ARTIGUE, MILTON FREDERICK, MONICA MECHE, and TERRY BEGNAUD, individually and in their official capacities, conspired with one another, and indeed voted (secretly or otherwise) to take this action, in accordance with the scheme and agreement between all Defendants referenced above. And UWS employee, JOSEPH TRAHAN, acting as the arm of the Board, carried out the scheme by entering upon the Plaintiff's property without lawful permission (i.e., trespassed) to "serve" the Board's illicit notice with this intent in mind, again, in accordance with the scheme and agreement between all Defendants referenced above.

44.

By sending the letter, The Board members and JOSEPH T RAHAN intended to permanently prohibit the Plaintiff from entering upon the property, in accordance with the scheme and agreement between all Defendants referenced above. In addition to having the effect of preventing the Plaintiff from attending the monthly Board meetings, it would also in effect, prohibit him from attending the annual Membership meeting. It would also prevent him from

campaigning for and/or serving on the Board. The intent was clearly aimed at quashing all questions, debates, criticism, or opposition to the Board and its management of the drinking water supply for the community. Ironically, it also prohibited Plaintiff from entering the System's property to even pay his monthly bill. And in accordance with the scheme and agreement between all Defendants referenced above, this letter was intended to provide the basis for the SMPSO Defendants to illicitly use their police powers to prevent Plaintiff from engaging in the First Amendment protected activities referenced above.

45.

At all times pertinent, the all Defendants knew that the letter had no lawful authority, was not issued by a Court of law, and had no legal effect as there was no lawful grounds to prohibit the Plaintiff from attending meetings, participating in the management of the organization, or campaigning for and serving on the Board.

46.

At no time did any of the UWS Defendants ever seek any legal action against the Plaintiff to lawfully restrain him from coming to the UWS property. At best, the letter was unlawful "self-help" under the law and had no lawful effect. But the letter served its purpose of giving the SMPSO Defendants grounds to illicitly utilize their police powers to deprive the Plaintiff of his First Amendment Rights in accordance with the scheme and agreement between all Defendants referenced above,

47.

The UWS Defendants knowingly and intentionally utilized the letter as the basis for all illicit actions undertaken by themselves and the SMPSO Defendants in ultimately confecting the arrest of the Plaintiff as complained of herein in accordance with the scheme and agreement

between all Defendants referenced above.

48.

At all times pertinent, the SMPSO defendants were aware that the letter had no lawful

effect, but took unlawful police actions complained of herein based on said letter.

49.

The Plaintiff intended to continue to exercise his rights undeterred, and wished to attend

the upcoming Board meeting on January 19, 2023, but feared legal or criminal reprisal if he did

so as a result of the Board's intimidation tactics contained in the aforementioned letter.

50.

Accordingly, on the afternoon of January 19, 2023, prior to the evening's scheduled

Board meeting, Plaintiff presented himself to the St. Martin Parish Sheriff's Department in St.

Martinville, La, to inquire as to whether he could be prohibited from attending a public meeting

of his drinking water system of which he was a paying member/patron.

51.

Plaintiff met with SMPSO Captain Charles Fuselier and gave him a copy of the Board's

letter. Plaintiff asked whether the Board could prevent him from attending the meeting as he was

a member of the System.

52.

Captain Fuselier apparently investigated the Sheriff's records, statewide records, and

spoke with the St. Martin Parish Clerk of Court's office, all to determine whether any lawful

restraining order or other order of a court had been issued prohibiting the Plaintiff from entering

upon the System's property. Finding none, he advised the Plaintiff that law enforcement had no

involvement in the matter and would not prevent him from entering the property, that this was a

matter between he and the Board, and that if the Plaintiff attended any meeting or entered the System's property to pay his bill, that he must not cause a disturbance.

53.

Based on his meeting with Captain Fuselier, Plaintiff believed that he was free to attend the Board meeting that evening.

54.

On the night of the meeting, **SMPSO DEPUTY CLAYGUS HERRING** was posted outside the doors of the meeting in uniform, on duty, and in a SMPSO squad unit. On information and belief, the UWS Board members had reached out to SHERIFF BREAUX directly, or high-ranking officer(s) within his department, claiming that they had obtained an "order" prohibiting the Plaintiff from entering the property and that law enforcement presence would be necessary to enforce the "order", all in accordance with the scheme and agreement between all Defendants referenced above.

55.

In accordance with the scheme and agreement between all Defendants referenced above, Dpty. HERRING had been assigned by his superior(s) at the SMPSO under the guise of providing private security detail at the meeting but in reality, for the exclusive purpose of exercising illicit lawful authority aimed at preventing the Plaintiff from entering the meeting.

56.

Plaintiff arrived at the appointed time and place of the meeting, parked, and was walking toward the building in the parking lot when DPTY. HERRING, whom he had never met before, yelled out the Plaintiff's name and summoned him over to where the deputy stood. Plaintiff complied with DPTY. HERRING's commands.

57.

Once Plaintiff arrived, DPTY. HERRING advised that Plaintiff was not permitted to enter the building because there was a "court order" prohibiting from entering. Plaintiff protested, claiming that: 1) he had never been served with any order; and 2) that he had just met with SMPSO Capt. Fuselier an hour earlier and they confirmed that no order existed and that law enforcement could not prohibit him from entering the meeting.

58.

DPTY. HERRING responded that he was just doing as he was ordered, that there was a "court order", and that under any circumstance, Plaintiff was not entering the meeting.

59.

Plaintiff attempted to contact Capt. Fuselier with his cell phone to clear up any confusion. Apparently, Capt. Fuselier was not on shift any longer, but the SMPSO dispatch officer on the other end of the call expressly confirmed and echoed that there was a "court order" prohibiting Plaintiff from entering the premises, that an unidentified supervisor had confirmed this information, and that DPTY. HERRING was not going to let the Plaintiff enter the meeting.

60.

Fearing that if he continued to press the issue, he would be arrested, the Plaintiff left the property unable to attend the January 19, 2023 meeting because of Dpty HERRING's unlawful exercise of police powers, in accordance with the scheme and agreement between all Defendants referenced above.

61.

The following morning, January 20, 2023, Plaintiff presented to the St. Martin Parish Clerk of Court and then to the SMPSO department in St. Martinville, LA, to attempt to

determine what lawful authority was used by DPTY. HERRING and the SMPSO Dispatch to prevent his entrance into the UWS meeting the night before.

62.

Both the Clerk's office and general legal counsel for the SMPSO confirmed that no such court order, or any order from any authority for that matter, existed which would have prohibited the Plaintiff from attending the public meeting the night before.

63.

A public records request to the SMPSO reflected that DPTY. HERRING had made no formal report of the prior night's events. Further, there was no record whatsoever that DPTY. HERRING had been dispatched to the UWS property for any particular reason or that he was there on a private security detail. In essence, there is no formal record that DPTY HERRING was ever assigned or even present at the UWS meeting on January 19, 2023. And there was no body camera or dash camera footage recorded either.

64.

At all times pertinent, and in accordance with the scheme and agreement between all Defendants referenced above, DPTY. HERRING knew that no lawful order even existed and opted to engage in deceit when stating otherwise to the Plaintiff and utilizing the non-existent order as his authority in preventing the Plaintiff from attending the meeting. Tellingly, DPTY. HERRING had no copy of any such order, nor could he confirm ever having actually seen same. At the minimum, when presented with information suggesting that no such order existed, DPTY. HERRING had a paramount duty confirm one way or the other before using his police power to prevent the Plaintiff from attending a public meeting and exercising his First Amendment Rights.

65.

DPTY. HERRING thus knowingly played a role in the scheme and agreement between all Defendants referenced above, to prevent the Plaintiff from entering the meeting and deliberately violated the Plaintiff's First Amendment rights to free speech, assembly, and to petition for redress by prohibiting him from entering the meeting by use of actual and or apparent lawful authority and police power. Alternatively, DPTY HERRING was an unwitting pawn in the scheme, but was acting under the direct orders of a supervising officer and/or SHERIFF BREAUX who was an active participant in the scheme, using his police powers to prevent the Plaintiff from entering the meeting under the guise of a "court order" he neither had in his possession nor ever saw.

66.

By virtue of the Plaintiff having spoken directly with the general legal counsel for the SMPSO on January 20, 2023 and his presenting a public records request to the SMPSO that same day, SHERIFF BREAUX was on full notice that one of his deputies had prevented a citizen from attending a public meeting without lawful authority. At all times, SHERIFF BREAUX knew or should have known that no lawful court order or restraining order existed prohibiting the Plaintiff from entering upon his water company's property and taking part in its governance as provided by law and by the company's own by-laws.

67.

In the weeks following, many member/patrons of the water System became more and more disgruntled with the quality of water received. Social media was abuzz with grievances and complaints from all over the system, and many planned to attend the next scheduled UWS Board meeting on February 16, 2023.

68.

Having confirmed with legal counsel for the Sheriff that there was no court order preventing him from attending the meetings, and having never been served with any court order thereafter, Plaintiff planned to attend the meeting.

69.

At all times prior to and at the time of the February 16, 2023 meeting, no one, including any of the UWS Defendants ever initiated any formal legal process against the Plaintiff, civil, criminal, or otherwise. At all times, Plaintiff was never lawfully prohibited from attending the System's public meetings. At all times, the SMPSO Defendants were fully aware that no lawful order existed during this time, but nonetheless, and in accordance with the scheme and agreement between all Defendants referenced above, proceeded to press on with the illicit exercise of their police powers to deprive the Plaintiff of his civil rights.

70.

In early February, as was his custom, Plaintiff submitted his written questions and issues he wanted to present at the monthly board meeting scheduled for February 16, 2023.

71.

On the night of the meeting, Plaintiff arrived at the UWS property to attend the meeting a few minutes late. He had just stepped into the parking lot from the roadway to find many angry and upset member/patrons walking out of the building.

72.

On site at the meeting were SMPSO CAPTAIN CAROL KNOTT, SMPSO CORPORAL DOUGLAS HEATON, SMPSO DEPUTY CLAYTON ALEXANDER, JR., and SMPSO DEPUTY KILAND CARMOUCHE, in accordance with the scheme and agreement between all

Defendants referenced above. All were present in uniform, on duty, and in 3-4 SMPSO squad units.

73.

SMPSO CAPTAIN CAROL KNOTT was posted inside the building while the remaining deputies were posted outside of the building.

74.

In speaking with some of the other members who were leaving, Plaintiff discovered that there were not enough Board members in attendance to constitute a quorum, so the meeting was cancelled.

75.

Plaintiff turned around to leave when DEPUTY ALEXANDER, who had never met Plaintiff, called out to him from across the parking lot and ordered him to present himself to the officers. Plaintiff peacefully complied.

76.

DEPUTY ALEXANDER, flanked by CORPORAL HEATON and DEPUTY CARMOUCHE aggressively approached and told Plaintiff he was not permitted on the property. Plaintiff replied that he was a member of the water system, was there to attend the public meeting, and that he had a right to attend the meeting because he was a member of the system.

77.

The deputies then curtly and summarily ended the conversation and placed the Plaintiff under arrest. The Plaintiff was handcuffed by DEPUTY ALEXANDER and escorted in front of the crowd to DEPUTY ALEXANDER's squad unit standing nearby, in accordance with the scheme and agreement between all Defendants referenced above.

78.

The crowd of upset members gathered to protest the arrest so CORPORAL HEATON, and DEPUTY CARMOUCHE stepped in, threatening the crowd with arrest if anyone interfered.

79.

CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE all openly professed that they were acting under direct orders from SHERIFF BREAUX and were sent to the meeting for the purpose of arresting the Plaintiff. In fact, CAPTAIN KNOTT was present at the meeting as commanding officer on the scene, and had planned the arrest and coordinated CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE to be there for those purposes, in accordance with the scheme and agreement between all Defendants referenced above. CAPTAIN KNOTT acted under the direct orders of SHERIFF BREAUX as well.

80.

The Plaintiff was detained against his will and without lawful or probable cause in violation of his Constitutional rights and/or falsely arrested for the duration of DEPUTY ALEXANDER's preparation of arrest documents. Either at the time of the arrest, or immediately following, CAPTAIN KNOTT left the scene, satisfied with the success of the scheme.

81.

After some discussion between CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE, the deputies decided to charge the Plaintiff with criminal trespass.

82.

Upon completion of the arrest documentation, Plaintiff was issued a citation with no

scheduled arraignment date and released from custody, in accordance with the scheme and agreement between all Defendants referenced above.

83.

CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE collectively admonished the Plaintiff as he left, warning him that if he returned, he would be trespassing and would face further criminal prosecution.  This too was a final success in the scheme and agreement between all Defendants referenced above, namely preventing the Plaintiff from exercising his future rights.

84.

On information and belief, when Plaintiff submitted his written questions and issues in the week before the meeting, the UWS Defendants knew he was planning on attending the meeting, and one or more members of the Board contacted SHERIFF BREAUX and conspired with him to plan the arrest of the Plaintiff at the meeting.

85.

This scheme and conspiracy was designed by all Defendants, conspiring and acting in concert with one another, to prevent the Plaintiff from exercising his First Amendment Rights, to intimidate him and the other disgruntled member/patrons, and to further retaliate against the Plaintiff for having exercised his First Amendment rights in the past, openly questioning, opposing, and criticizing the Board's failed management of the water system. And afterward, the scheme was designed to place a prior restraint on the Plaintiff's future speech, all in open violation of his First Amendment Rights.

86.

This unlawful threat of an unlawful future arrest has prevented the Plaintiff from

attending Board meetings, from participating in the public forum and management of the water system, and from otherwise advocating for better drinking water in his community. Plaintiff is unlawfully restrained from campaigning for and/or serving on the Board of UWS.

87.

The Defendants' collective actions in concert with one another and conspiracy has resulted in a flagrant violation of the Plaintiff's past, present, and future First Amendment Rights and were taken in direct retaliation against the Plaintiff for having exercised those rights in the past.

88.

At present, Plaintiff has yet to receive notice of an arraignment date and otherwise has remained in a legal limbo- he has not had an opportunity to defend himself against the spurious trespass charges, but while waiting for that chance, he remains under the open and indefinite threat of arrest from SHERIFF BREAUX, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE, in accordance with the scheme and agreement between all Defendants referenced above.

89.

All Defendants involved knew or should have known that the arrest would be defective on multiple fronts and nonetheless, acting in concert and in accord with the conspiracy, carried it out with the intent of depriving the Plaintiff of his Constitutional rights. Each Defendant involved had actual and constructive knowledge and information in their possession at the time of the arrest that the Plaintiff had not been lawfully prohibited from attending the meetings, nor could he be, and knew or should have known what they were doing was unlawful and in direct violation of Plaintiff's Constitutional rights.

90.

SHERIFF BREAUX, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE, in collusion with the UWS Defendants, in a calculated and infamous move, opted to arrest the Plaintiff for the specific and intentional purposes of retaliating against, embarrassing, and intimidating him, and to create a public spectacle aimed at exacting revenge, ridicule, and retribution against the Plaintiff for exercising his First Amendment Rights and as a show of force for the general public that the UWS Board was not to be challenged or opposed.

91.

Defendant's actions confected the wrongful arrest, wrongful detention, and effective wrongful restraint of the Plaintiff.

92.

During the Plaintiff's detention, CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE reported to SHERIFF BREAUX and/or his representative that the arrest had occurred, in celebratory fashion, and to communicate their compliance with his orders in furtherance of the conspiracy to deprive the Plaintiff of his civil rights, reputation, and freedom. They also warned that they should expect phone calls from the disgruntled crowd to complain of the arrest.

93.

As a result of his unlawful arrest, Plaintiff will be required to obtain legal counsel for his defense.

94.

As a result of the foregoing events, Plaintiff was caused to suffer humiliation and damages including a deprivation of his civil rights under the US and Louisiana Constitutions, severe mental anguish, inconvenience, invasion of privacy, public humiliation, embarrassment, fear and fright.

95.

As duly elected sheriff of the Parish of St. Martin, LA, SHERIFF BREAUX had at all times an affirmative duty to ensure that his officers and deputies were at all times engaged in law enforcement in the parish in conformity with citizens', including the Plaintiff's, constitutional and civil rights by way of training, education, policy, procedure, supervision, and/or orders, standing, special, or otherwise. By planning and executing this scheme with the UWS Defendants, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE, and/or other unidentified employees of the Sheriff's Office, all Defendants involved violated their training and education and otherwise knowingly and intentionally played their part in the conspiracy to exact revenge against the Plaintiff. The actions of Defendants as alleged herein reflect a custom and unspoken policy within the St. Martin Parish Sheriff's Office of intentional, wanton and reckless disregard for the constitutional rights of and contempt for those who opposed the Board of the United Water System.

96.

SHERIFF BREAUX, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and DEPUTY CARMOUCHE's actions, inactions, omissions, and intentional conduct combined with that of the UWS Defendants, in collusion with one another and SHERIFF BREAUX himself reflect the custom and policy of the SMPSO at the time of

Plaintiff's arrest and the events giving rise to this Complaint evidence a custom, culture, and practice within the Sheriff's office of the use of illegal, unethical, and unsavory means to intimidate citizens from exercising their constitutional rights to confront and oppose elected officials or to petition their government for redress under the First Amendment.

97.

Because of the SMPSO Defendants' actions stated above, statements and overt threats, and the perceived authority with which they were made, Plaintiff has feared arrest or other further unlawful criminal retaliatory action from SHERIFF BREAUX and his employees.

98.

Each SMPSO Defendant involved had taken an oath of office as law enforcement agents and were sworn to uphold the law of the United States and the State of Louisiana. Each Defendant involved violated and conspired to violate their oaths and failed to intervene where necessary to prevent SHERIFF BREAUX and their co-conspirators from effecting this unlawful arrest.

99.

Each of the Defendants conspired together to commit the acts described above. By virtue of this conspiracy, they are all jointly and severally liable for the damages caused.

100.

Upon information and belief, Defendants have intentionally destroyed, alienated, or secreted information and evidence necessary for Plaintiff to prosecute his claims in this matter when they had a duty to preserve such evidence, particularly in light of Louisiana Public Records laws. Plaintiff accordingly claims damages for Defendants' intentional spoilation of evidence and further prays for an adverse presumption and any other general or equitable relief to which he is

or may be entitled.

## CAUSES OF ACTION

**I. Civil Rights Violations**

101.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

102.

All of the foregoing intentional acts, negligence, and other acts and omissions of Defendants as stated herein were done in violation of Plaintiffs' rights, privileges and immunities secured him by provisions of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

103.

All Defendants conspired under color of state law to deprive Plaintiff of his rights, privileges and immunities secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

104.

Plaintiff specifically alleges pursuant to the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the U. S. Constitution, he is guaranteed the right to petition, the right to free speech, the right to assembly, the right to act as press, the right to be free from unreasonable searches and seizures, the right to due process, the right to property, and the right to due process as an accused. Defendants, collectively, intentionally and knowingly violated and/or conspired to violate the constitutional rights of the Plaintiff as set out in the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U. S. Constitution while acting under the color of state law as set

out in 42 U. S. C. § 1983 and 1985 and continue to do so at present.

105.

Defendants, with knowledge of Plaintiffs' Due Process and personal liberty rights and his rights as an accused, and with deliberate indifference to same, intentionally acted or failed to act in such a way as to provide, ensure, and/or safeguard the same, in violation of rights secured to Plaintiff by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and indeed consciously and intentionally intended to violate those rights as retribution for Plaintiff's role in attempting to publicly address and improve his community's drinking water quality through lawful process, public activism and engagement with his community leaders, and attempting to serve as one of those leaders through the democratic election process provided by law and by the UWS by-laws.

106.

Defendants' intentional acts, negligence, and other acts and omissions of Defendants as stated herein were done in open and egregious violation of Plaintiffs' procedural and substantive due process rights protected by the Fourth, Fifth, Sixth, and Fourteenth Amendments.

107.

Those intentional actions described herein, in combination with the callous indifference to the due process and property rights displayed by Defendants, collectively, caused and/or contributed to Plaintiff's injury and damages as specified herein. Defendants' above-mentioned actions and/or omissions were negligent and/or reckless and/or intentional. Defendants' above-mentioned actions and/or omissions were committed under color of state law and by private citizens conspiring with state actors for such purposes.

108.

Accordingly, Plaintiff prays for any and all damages cognizable under 42 USC § 1983 and 1985 including damages, attorneys fees, costs, punitive damages, and interest.

109.

The conduct described above constitutes a violation of 42 U.S.C. §1983 and §1985. These civil rights violations were a proximate cause, or, alternatively a producing cause of Plaintiff's damages.

110.

Furthermore, each Defendant had knowledge that the wrongs conspired and planned to be done by their co-conspirators were about to be committed, and had power to prevent or aid in preventing the commission of the same. Each Defendant neglected and/or refused to do so, failing to prevent the wrongful acts complained of herein from being committed. Thus each Defendant is liable to the Plaintiff for all damages caused by the wrongful acts complained of herein. Each Defendant intentionally failed to exercise reasonable diligence which would have prevented the Plaintiff's damages. Thus Plaintiff brings additional claims against Defendants under 42 USC § 1986.

## II.    Violation of State Civil Rights

111.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

112.

Plaintiff further alleges, based upon the facts as pled herein, that his constitutional rights as guaranteed by the Louisiana Constitution were violated by the actions of the Defendants

herein, including, but not necessarily limited to, violation of Louisiana Constitution Article I, Sections 2, 3, 4, 5, 6, 7, 9, and 13 all of which protect Louisiana citizens by guaranteeing rights to due process of law, individual dignity, property, privacy, freedom from intrusion, freedom of expression, to petition, and rights as an accused.

113.

Defendants acted in concert with one another under color of state law depriving Plaintiff of his rights secured under the Louisiana Constitution. The UWS Defendants as private citizens conspired with the SMPSO Defendants as State Actors for these very purposes.

114.

Those actions described herein, in violation of Plaintiff's rights under the Louisiana Constitution, in combination with the callous indifference to rights under the Louisiana Constitution displayed by all Defendants collectively, caused and/or contributed to Plaintiff's injury and damages as specified herein.

III.    **False Imprisonment**, **Wrongful Arrest, Wrongful Detention**

115.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

116.

The conduct of Defendants described above caused Plaintiff to be wrongfully arrested, and detained. Once again, this was the intent of the defendants as retribution for Plaintiff's water quality efforts. This false imprisonment, arrest, and detention was a proximate cause, or, in the alternative a producing cause of Plaintiff's damages.

## IV.    Retaliatory Arrest in Violation of First Amendment Rights

117.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

118.

Under the First Amendment, Plaintiff is endowed by the US Constitution with the most sacred of rights- the right to Freedom of Speech, Freedom of Assembly, Freedom of the Press, and Freedom to Petition the government for redress. Plaintiff exercised these rights by engaging in his efforts to address and improve drinking water quality in his community.

119.

Defendants' unlawful conduct as alleged herein was in direct retaliation against the Plaintiff for exercising his First Amendment rights, and was intended to intimidate, embarrass, and harass him as punishment for his exercise of those rights, and thus constitutes a Retaliatory Arrest.

120.

Plaintiff accordingly seeks all damages cognizable under Federal and State Law as a result of this retaliatory arrest.

## V.    Intentional Infliction of Emotional Distress/Mental Anguish

121.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

122.

The conduct of Defendants was extreme and outrageous conduct which caused Plaintiff

emotional distress intentionally and with the realization to a virtual certainty that mental anguish would occur. The conduct of Defendants described herein was intended to cause Plaintiff to suffer mental anguish and, in fact, Plaintiff did suffer mental anguish.  Defendant's conduct was a proximate cause, or, in the alternative a producing cause of Plaintiff's damages.

**VI.    Negligence**

123.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

124.

Defendants collectively, were negligent and/or engaged in intentional, gross, willful, and wanton conduct as complained of herein and for the reasons more fully and particularly stated above, and therefore are liable to and indebted unto Plaintiff under the provisions of La. C.C. Arts. 2315, et seq.

125.

The conduct of Defendants described above were a proximate cause, or, in the alternative a producing cause of Plaintiff's damages.

**VII.    Trespass and Invasion of Privacy**

126.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

127.

Defendant, JOSEPH TRAHAN, acting under the orders and direction of the remaining UWS Defendants, at all times knew that they had no legal authority to enter upon Plaintiff's

property and "serve" him with a letter prohibiting him from entering UWS property as at all times he was a member of the system, with all rights and privileges attendant thereto, including the right to attend meetings, to campaign for and serve on the Board, and to otherwise address his grievances with the Board. Defendants collectively, conspired to knowingly trespass and invade the Plaintiff's privacy nonetheless in furtherance of the scheme of retaliation.

128.

The conduct of Defendants described above was a proximate cause, or, in the alternative a producing cause of Plaintiff's damages.

## DAMAGES

## I.    Actual Damages

129.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

130.

The conduct of the Defendants has caused Plaintiff to suffer mental anguish, fear, fright, intimidation, inconvenience, and the prospect of incurring legal debt for his criminal defense.

131.

Defendants' conduct has likewise caused significant injury to plaintiff's reputation in the community at large as well as in the veteran community of which Plaintiff is a proud member.

132.

Those acts alleged herein, or any combination thereof, caused resulting injury to the Plaintiff. These acts, in combination with the callous indifference to the Plaintiff's Constitutional Rights under the US and Louisiana Constitutions, caused and/or contributed to Plaintiffs' injuries

and damages.

133.

As a direct result of the incidents, and intentional, wanton, and reckless conduct of the Defendants, PAUL BOUDREAUX claims damages suffered as a result of the above described acts and omissions as follows:

a.      Mental suffering and anguish/ emotional distress;

b.      Loss of liberty and deprivation of civil rights;

c.      Inconvenience;

d.      Extreme fear and fright, apprehension, and undue burden;

e.      Humiliation, embarrassment, and loss of/ insult to reputation in the community;

f.      Damage to criminal record;

g.      Attorneys fees, costs, and expenses incurred in defending against criminal prosecution;

h.      Reasonable attorneys fees incurred in the investigation and prosecution of this matter;

i.      Loss of enjoyment of life;

j.      Punitive damages under 42 USCA § 1983, 1985, 1986, et seq;

k.      Violation of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment Rights as well as his Louisiana State Constitutional rights enumerated herein;

l.      Any and all other damages to be proven at the trial of this matter.

Plaintiff requests such damages as deemed just and fair to compensate Plaintiff for his actual damages in an amount reasonable in the premises.

## II.    Attorneys Fees

134.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations

contained in the foregoing paragraphs of this Complaint as if restated herein.

135.

Plaintiff has retained counsel to represent him in this action and has agreed to compensate counsel a reasonable fee. Plaintiff requests that he be awarded reasonable and necessary legal fees pursuant to 42 U.S.C.§1988 as well as under applicable Louisiana state laws.

**III.    Punitive Damages**

136.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

137.

The defendants herein intended to violate the civil rights of Plaintiff and deprive him of his civil liberties. Their conduct was egregious, shocking to the conscience, motivated by evil motive or intent, and involved reckless and callous indifference to the Plaintiff's federally-protected rights. Plaintiff requests that punitive damages be awarded in an amount sufficient to deter such unlawful and anti-social conduct in the future and to set an example for the community that such intentional and malicious conduct will not be tolerated in this community.

**IV.    Additional Remedies**

138.

Plaintiff adopts by reference and incorporates herein for all purposes the allegations contained in the foregoing paragraphs of this Complaint as if restated herein.

139.

In addition to the damages referenced above, if the damages are too slight in view of the

gravity and egregious nature of Defendants' conduct, Plaintiff would ask the Court to fashion a remedy pursuant to its broad discretionary powers under the Civil Rights provisions and award the Plaintiff accordingly.

140.

The defendants' intentional, gross, willful and wanton conduct and reckless disregard for the Constitutional Rights of the Plaintiffs was a substantial cause in fact and the legal cause of Plaintiff's damages and injuries. The conduct of the defendants as described above was done maliciously and with bad faith toward Plaintiff. As a result, Plaintiff is entitled to an award of punitive damages under 42 USCA §§ 1983, 1985, and 1986.

## V.    PRAYER FOR INJUNCTIVE RELIEF

141.

Plaintiff desires to remain engaged in his efforts to address drinking water quality, such efforts being the crux of all of the Defendants' acts and omissions complained of herein and the resultant damages alleged.

142.

In connection with his intended continued efforts, Plaintiff desires to campaign for and attempt to serve on the Board of UWS as is his right under the system's by-laws and under federal and state law.

143.

Due to the still-standing threat of arrest expressly given by SMPSO Defendants CARMOUCHE, HEATON, and ALEXANDER, Plaintiff is lawfully prohibited from entering the System's property. As such, Plaintiff is literally and physically prevented from seeking and obtaining elected office with the Board of UWS (engaging in his First Amendment Protected

efforts to address drinking water as referenced above) as he is unable to attend the annual membership meeting in September 2023 where such elections occur.

144.

Moreover, if he were to somehow be elected without being able to attend the annual membership meeting in September, 2023, he would not be able to physically attend any board meetings to serve thereafter.

145.

This result was consciously desired and has been achieved in accordance with the scheme and agreement between all Defendants referenced above.

146.

Accordingly, as a result of the Defendants' actions complained of herein, Plaintiff has sustained a direct deprivation of his First, Fourth, Fifth, and Fourteenth Amendment Rights and other privileges and immunities in the past as complained of herein and is immediately in danger of sustaining a direct deprivation of such rights, privileges, and immunities in the future as a result of the challenged official conduct (ongoing and indefinite threat of future arrest) of the SMPSO Defendants acting in concert with the UWS Defendants. Further, the injury or threat of injury is both real and immediate as the annual Membership meeting is rapidly approaching in September of this year (a little less than three months from the filing of this Complaint). Unless this deprivation of rights is addressed via injunctive relief, Plaintiff will not be able to engage in his efforts to resolve drinking water quality in his community.

147.

Therefore, Plaintiff seeks and is entitled to injunctive relief under 42 USCA §1983 by way of an order from this Court prohibiting SHERIFF BREAUX, DEPUTY HERRING,

CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY ALEXANDER, and SMPSO DEPUTY CARMOUCHE from preventing Plaintiff from peacefully exercising all lawful rights to participate in the governance and management of the United Water System, including the right to attend regular board and annual membership meetings, to enter upon the property of the System, to pay his bills there, to address grievances with the System, and to campaign for and attempt election to serve on the board of said system unless and until a lawful order is issued by a court of competent jurisdiction and venue, prohibiting him from engaging in such activities or entering upon said property.

**WHEREFORE**, premises considered, Plaintiff, PAUL BOUDREAUX prays that Defendants, ST. MARTIN PARISH SHERIFF BECKETT BREAUX, SMPSO DEPUTY CLAYGUS HERRING, SMPSO CAPTAIN CAROL KNOTT, SMPSO CORPORAL DOUGLAS HEATON, SMPSO DEPUTY CLAYTON ALEXANDER, JR., SMPSO DEPUTY KILAND CARMOUCHE, UNITED WATER SYSTEM, INC., BARABARA HEBERT, LORNA MILLS, LYDIA KNOTT, JOANNE ARTIGUE, MILTON FREDERICK, MONICA MECHE, TERRY BEGNAUD, and JOSEPH TRAHAN be duly cited and served with a copy of this Complaint for Damages and Injunctive Relief and summons and that after all legal delays and due proceedings be had, there be judgment rendered herein in favor of Plaintiff against Defendants, jointly, severally, and in solido, in the full and true sum of an amount reasonable in the premises as prayed for herein to be proven at the trial on the merits of this matter, plus legal interest thereon from the date of judicial demand until paid, for all costs of these proceedings, attorney's fees, punitive damages, and general and special damages. Plaintiff further prays for injunctive relief under 42 USCA §1983 by way of an order from this Court prohibiting SHERIFF BREAUX, DEPUTY HERRING, CAPTAIN KNOTT, CORPORAL HEATON, DEPUTY

ALEXANDER, and SMPSO DEPUTY CARMOUCHE from preventing Plaintiff from peacefully exercising all lawful rights to participate in the governance and management of the United Water System, including the right to attend regular board and annual membership meetings, to enter upon the property of the System, to pay his bills there, to address grievances with the System, and to campaign for and attempt election to serve on the board of said system unless and until a lawful order is issued by a court of competent jurisdiction and venue, prohibiting him from engaging in such activities or entering upon said property. Plaintiff lastly prays for any and all general, equitable, revocatory, and declaratory relief to which he is or may be entitled.

Respectfully submitted:

*/s/ Gordon J. Schoeffler*

_____
GORDON J. SCHOEFFLER (#29412)
730 Jefferson St. (70501)
P.O. Box 4829
Lafayette, LA 70502
(337)234-5505- phone
(337)261-0799- fax
gordon@gjslawoffice.com

**Attorney for Plaintiff, PAUL BOUDREAUX**

**PLEASE ISSUE SUMMONS FOR**:

ST. MARTIN PARISH SHERIFF BECKETT BREAUX

SMPSO DEPUTY CLAYGUS HERRING

SMPSO CAPTAIN CAROL KNOTT

SMPSO CORPORAL DOUGLAS HEATON

SMPSO DEPUTY CLAYTON ALEXANDER, JR.

SMPSO DEPUTY KILAND CARMOUCHE

UNITED WATER SYSTEM, INC.

BARABARA HEBERT

LORNA MILLS

LYDIA KNOTT

JOANNE ARTIGUE

MILTON FREDERICK

MONICA MECHE

TERRY BEGNAUD

JOSEPH TRAHAN