**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

PAUL E BOUDREAUX                    CASE NO.  6:23-CV-00897

VERSUS                              JUDGE ROBERT R. SUMMERHAYS

BECKETT BREAUX ET AL                MAGISTRATE JUDGE CAROL B.
                                    WHITEHURST

## RULING

The present matters before the Court are three motions for summary judgment: (1) the Motion for Summary Judgment filed by defendants United Water System, Inc. ("United") and Joseph Trahan [ECF No. 57]; (2) the Motion for Summary Judgment filed by individual members of United Water System's Board of Directors named as defendants [ECF No. 62]; and (3) a Motion for Summary Judgment filed by defendants St. Martin Parish Sheriff Beckett Breaux, Deputy Claygus Herring, Captain Carol Knott, Corporal Douglas Heaton, Deputy Clayton Alexander, Jr., and Deputy Kiland Carmouche (collectively referred to as the "sheriff's office defendants") [ECF No. 59]. After reviewing the parties' filings, the summary judgment record, and the relevant authorities, the Court rules as follows.

## I.
### BACKGROUND

This § 1983 case arises out of an ongoing dispute between Boudreaux and a private water supply company over water quality and Boudreaux's right to attend and record the company's board meetings. These disputes culminated in Boudreaux's arrest and brief detention on state charges of criminal trespass and remaining after being forbidden. United is a private, non-profit

water distribution corporation that supplies water to customers in Arnaudville, Louisiana.[1] According to United, it is "a private, not public, entity and its Board of Directors are not run, controlled, or operated by state, municipal, or local government officers or officials."[2] Moreover, its offices at 1004 Twin Oaks Dr. in Arnaudville are privately owned.[3] United holds monthly meetings of its Board of Directors and invites the members of the community it serves to attend its board meetings held at its Arnaudville offices.[4] United contends that its board meetings are governed by its company by-laws and not by a state statute or regulation.[5]

At some point before 2023, Boudreaux and other members of the community began complaining about the quality of the water supplied by United.[6] Boudreaux was a frequent attendee of United's board meetings and, at one point, sought election to United's board.[7] United contends that Boudreaux and other members of the community were disruptive during board meetings and that they attempted to make audio and video recordings of the United's board meetings.[8] Accordingly, United's board implemented new rules for its board meetings requiring members of the public to state in advance their questions and comments to the board on written forms.[9] United's board also prohibited meeting attendees from making audio and video recordings of its board meetings.[10] At a November 17, 2022 board meeting, United's board announced its no-recording policy and its restrictions on public comments.[11] According to Boudreaux, he and other members of the community "were undeterred, exercising their First Amendment rights to

---

[1] ECF No. 1 at ¶¶ 9, 13.
[2] ECF No. 57-5 at ¶ 14.
[3] *Id.* at ¶ 11.
[4] ECF No. 1 at ¶ 13.
[5] *Id.* at ¶ 11; ECF No. 57-5 at ¶ 14.
[6] ECF No. 1 at ¶¶ 15-19.
[7] *Id.* at ¶¶ 15, 24-28.
[8] *Id.* at ¶¶ 20-21, 34; ECF No. 57-5 at ¶ 4.
[9] ECF No. 1 at ¶¶ 31-34; ECF No. 57-5 at ¶¶ 4-5.
[10] *Id.*
[11] *Id.*

broadcast information to the community....["12] Accordingly, an attorney for United's board contacted the St. Martin Parish Sheriff's office to report a "disturbance" at the meeting. A deputy was dispatched to the meeting but took no action.[13]

Boudreaux alleges that he submitted a written "appearance form" in early January 2023 informing United that he intended to attend the board's meeting on January 19, 2023.[14] In response, an employee of United, Joseph Trahan, delivered a letter from United's president, Barbara Hebert, to Boudreaux notifying him that "on behalf of the Board of Directors, please be advised that you are hereby prohibited from entering upon the property of United Water Systems, Inc. located at 1004 Twin Oaks Dr., Arnaudville, Louisiana."[15] Trahan hand delivered the letter to Boudreaux at his residence.[16] Despite this notice, Boudreaux attempted to attend United's January 19, 2023 board meeting but was turned away by Deputy Claygus Herring of the St. Martin Parish Sheriff's Office.[17] Boudreaux again attempted to attend the next United board meeting on February 16, 2023. According to Boudreaux, four sheriff's department officers were posted at United's offices that evening—Captain Carol Knott, Corporal Douglas Heaton, Deputy Clayton Alexander, Jr., and Deputy Kiland Carmouche.[18] One of the deputies, Clayton Alexander, spotted Boudreaux standing in United's parking lot and "flanked by Cpl. Heaton and Deputy Carmouche aggressively approached and told plaintiff he was not permitted on the property."[19] Boudreaux refused to leave, telling the deputies that he was a member of the water system and that he had a right to attend the

---

[12] ECF No. 1 at ¶ 35.
[13] ECF No. 57-2 at ¶¶ 6-8; ECF No. 1 at ¶¶ 35-36.
[14] ECF No. 1 at ¶ 40.
[15] *Id.* at ¶¶ 40-41; ECF No. 57-2 at ¶ 7; ECF No. 57-5.
[16] *Id.*
[17] ECF No. 57-2 at ¶ 8; ECF No. 1 at ¶ 40.
[18] ECF No. 1 at ¶¶ 70-72.
[19] *Id.* at ¶ 76.

meeting. The deputies then placed Boudreaux under arrest.[20] He was briefly detained and charged with trespass and remaining while being forbidden.[21]

Boudreaux subsequently filed the present § 1983 action, alleging that United, its Board of Directors, and the St. Martin Parish Sheriff's office conspired to deprive him of his First Amendment rights to attend and record the meetings of United's Board of Directors.[22] He alleges that when he attempted to assert his First Amendment rights, the sheriff's office defendants retaliated against him by wrongfully arresting and detaining him.[23] He asserts § 1983 claims based on alleged violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[24] He also asserts state law claims against United, its Board of Directors, and the Sheriff's office defendants.[25] Following the close of discovery, the sheriff's office defendants, United, and the United board members named as defendants filed motions for summary judgment seeking dismissal of all of the claims asserted against them.

## II.
### THE SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[26] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "A genuine issue of material fact exists

---

[20] *Id.* at ¶ 76-77, 81-82.
[21] *Id.*
[22] ECF No. 1.
[23] ECF No. 1.
[24] ECF No. 1 at ¶ 103.
[25] ECF No. 1 at ¶¶ 111-126.
[26] Fed. R. Civ. P. 56(a).
[27] *Id.*

when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[28]

As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[29]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[30] "Credibility determinations are not part of the summary judgment analysis."[31] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[32] Under Rule 56(f), a court may "[a]fter giving notice and a reasonable time to respond … (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

---

[28] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

[29] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

[30] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).

[31] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

[32] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.
## UNITED WATER SUPPLY AND ITS BOARD MEMBERS

### A. <u>Section 1983 Claims</u>.

United Water Supply and its board members first challenge Boudreaux's claims under 42 U.S.C. § 1983 on the grounds that United and its board of directors are not state actors. Section 1983 creates a private right of action to redress a violation of the Constitution or laws of the United States by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[33] In other words, "the party charged with the deprivation must be a person who may fairly be said to be a state actor."[34] Private individuals, in contrast, "generally are not considered to act under color of law … [and] are not considered state actors."[35] In certain circumstances, however, private individuals and entities may be considered state actors for purposes of § 1983. For example, the actions of a private, regulated company may be considered state action where "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself"—the so-called "close nexus" or "symbiotic relationship" exception.[36] Similarly, private action may qualify as state action for purposes of § 1983 where (1)

---

[33] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).
[34] *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982).
[35] *Id.*
[36] *Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 351 (1974) (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972)). The *Moose Lodge* court looked to whether private and public actors where so intertwined that there was a "symbiotic relationship" between them. *Moose Lodge No. 107*, 407 U.S. at 175.

the private actor performs "a traditional, exclusive public function;"[37] (2) the government compels the private actor to take the challenged action;[38] or (3) the private actor conspires or acts jointly with a state actor to carry out the challenged action.[39]

Here, Boudreaux has not alleged facts, nor has he pointed to competent summary judgment evidence, showing that United and its board of directors acted under color of state law. The summary judgment record reflects that United is a private, non-profit corporation formed under Louisiana law, and that its offices at 1004 Twin Oaks Drive in Arnaudville, Louisiana are privately owned by the company.[40] United and its board "are not run, controlled, or operated by state, municipal, or local governmental officers or officials," and United's internal operations are governed not by state statute but by the corporation's by-laws.[41]

There is evidence in the summary judgment record that United is regulated by the state—for example, that it is subject to state water quality regulations and regulation by the Louisiana Public Utility Commission ("PUC").[42] The Supreme Court, however, has rejected the argument that the mere existence of a state regulatory regime is sufficient to convert a private utility into a state actor. In *Jackson v. Metropolitan Edison Co.*, the plaintiff argued that a private power utility was a state actor and that it violated the Due Process Clause by terminating her utility services for non-payment.[43] In this regard, the plaintiff alleged that the defendant held "a certificate of public convenience issued by the Pennsylvania public utility Commission empowering it to deliver electricity" to the plaintiff's service area, that it was "subject to extensive regulation by the [Public Utility Commission], and that its rate tariff was filed with and approved by the Public Utility

---

[37] *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019).
[38] *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).
[39] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–942, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).
[40] ECF No. 57-5 at ¶¶ 11, 14.
[41] *Id.*
[42] *Jackson*, 419 U.S. at 350.
[43] *Id.*

Commission."[44] The plaintiff alleged that her service was terminated pursuant to that approved rate schedule.[45] The Supreme Court rejected the plaintiff's state action argument, holding that government regulation of a utility, standing alone, is insufficient to convert a private utility into a state actor—even if the "regulation is extensive and detailed, as in the case of most public utilities."[46] According to the Supreme Court, state regulation of a private utility did not establish "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." [47]

Here, Boudreaux has presented even less evidence of a close nexus between the state and United. Specifically, Boudreaux's complaint challenges how United conducts its public meetings and the fact that United invoked its right as a private property owner to prohibit Boudreaux from entering its property. In this regard, the factual underpinnings of Boudreaux's claims are not grounded on a close nexus between United and its state regulators. Boudreaux cites state water quality regulations and the regulations contained in the Louisiana Open Meetings Law. But Boudreaux fails to show how the water quality regulations of the Louisiana PUC or even the requirements of Louisiana's Open Meetings Laws create the close nexus or symbiotic relationship required to convert private action into state action under the standard articulated in *Jackson*.[48]

---

[44] *Id.* at 346.

[45] *Id.*

[46] *Id.* at 350.

[47] *Id.*

[48] Boudreaux pleads in a conclusory fashion that United is subject to the requirements of the Louisiana Open Meetings Law— La. Rev. Stat. 42:14. This statute mandates that every meeting of a *public body* shall be open to the public unless closed pursuant to other provisions of the statute. Private, non-profit entities may qualify as a "public body" under certain circumstances. For example, in *Seghers v. Community Advancement, Inc*., 357 So.2d 626, 627 (La. App. 1st Cir.1978), the court held that Community Advancement, Inc., a private, non-profit corporation, constituted a "public body" or "authority" subject to the Open Meetings Law. The court based its reasoning on evidence that the city and parish councils passed resolutions sponsoring the corporation and, several years later, both councils passed resolutions reaffirming the sponsorship and redesignating the corporation as a city/parish agency to administer anti-poverty programs. The corporation also derived nearly all of its support from local, state, and federal funds. Here, Boudreaux has not pled facts or pointed to evidence of such a symbiotic relationship between United and the state, city, or parish governments. Accordingly, Boudreaux has not shown that United is subject to the Open Meeting Law. But even if he did, while United's actions may be regulated by that law, they do not convert United into a state actor

Boudreaux further argues that, as a water supply utility, United provides an essential public service.[49] This allegation is also insufficient to convert United into a state actor. Courts have found state action where a private entity exercises powers that are "traditionally the exclusive prerogative of the State."[50] In *Jackson*, the Supreme Court observed that a private entity that, for example, exercises the traditional and exclusive power of eminent domain might qualify as a state actor with respect to that power.[51] However, the Court rejected the argument that the provision of utility services—even where those services are provided pursuant to a certificate of convenience granted by the state—is a power that is traditionally and exclusively exercised by the state.[52] Likewise, the provision of water to a defined geographic area is not a traditional and exclusive state power that transforms a private water supply company into a state actor.[53]

Finally, Boudreaux argues that United is a state actor because it conspired with state actors—the St. Martin Parish Sheriff's Office—to deprive him of his rights under the First Amendment. Courts have held that private persons "may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors."[54] To hold a private actor liable for conspiring with a state actor under Fifth Circuit precedent (*Priester v. Lowndes County*), a plaintiff must prove (1) that there was an agreement between the private actor and a public actor to commit an illegal act, and (2) the conduct

___

for purposes of § 1983 because that state statute is merely regulatory in nature and does not rise to the level of creating a symbiotic relationship between United and the state.

[49] ECF No. 64 at 13; ECF No. 1 at ¶ 13.
[50] 419 U.S. at 352.
[51] *Id.*
[52] *Id.*
[53] *See Blankenship v. Buenger,* 653 Fed. Appx. 330, 337 (5th Cir. June 28, 2016) (holding that a private water supply company was not a state actor merely because it was heavily regulated by the state and operated as a water utility—"We conclude that the provision of water services does not fall within the 'very few activities' exclusively reserved to the state.") (unpublished). While *Blankenship* addressed the status of private water supply companies under Texas law, Boudreaux has not cited—and the Court has not found—any authority under Louisiana law that would lead to a different conclusion for a private water supply company in Louisiana.
[54] *Ballard v. Wall,* 413 F.3d 510, 518 (5th Cir. 2005).

9

of these private and public actors resulted in a deprivation of the plaintiff's constitutional rights.[55] These conspiracy allegations must be supported with "specific facts" showing an agreement between the private and public actors—conclusory allegations of a conspiracy are not sufficient to hold a private person liable under § 1983.[56]

In his complaint, Boudreaux alleges conspiracies among United and the members of United's board of directors, among Sheriff Breaux and his deputies, and between United and the St. Martin Parish Sheriff's Office. For example, Boudreaux alleges:

- "All [United] Defendants conspired with or acted in concert with the SMPSO Defendants, including SHERIFF BREAUX, to deprive the Plaintiff of his federal rights, acting under color of law;"[57]

- "In Plaintiff's case, all Defendants also conspired with one another and acted in concert together under color of state law to engage in retaliation against Plaintiff for his past exercise of his First Amendment Rights;"[58]

- "… all Defendants conspired and acted in concert with one another under color of state law to place a prior restraint on Plaintiff's free speech and utilized unlawful and unconstitutional means of prohibiting the exercise of those rights indefinitely;"[59]

- "…confounded by the inability to prohibit Plaintiff and others from filming at the Board meetings or have the Plaintiff and others removed from the meetings, the individual members of the Board of [United] conspired with one another and planned a scheme to prevent the Plaintiff from … attending meetings, speaking, questioning, and addressing the Board, filming and broadcasting the meetings, etc…;"[60]

- "Each [United] Board Member … individually and in their official capacities, conspired with one another, and indeed voted (secretly or otherwise) to take this action, in accordance with the scheme and agreement between all Defendants referenced above";[61] and

---

[55] *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004).
[56] *Tebo v. Tebo*, 550 F.3d 492, 497 (5th Cir. 2008).
[57] ECF No. 1 at ¶ 3.
[58] *Id.* at ¶ 14.
[59] *Id.*
[60] *Id.* at ¶ 38.
[61] *Id.* at ¶ 43.

- "On information and belief, when Plaintiff submitted his written questions and issues in the week before the meeting, the [United] Defendants knew he was planning on attending the meeting, and one or more members of the Board contacted SHERIFF BREAUX and conspired with him to plan the arrest of the Plaintiff at the meeting."[62]

Boudreaux's allegations of a conspiracy among United's board and employees does not satisfy the requirements for state action because these board members and employees are not state actors. To satisfy *Priester*, Boudreaux must come forward with evidence of an agreement between United (or its board members) and a state actor. Similarly, allegations that Sheriff Breaux conspired with his deputies or other employees of the St. Martin Parish Sheriff's Office does not support the existence of an agreement between the sheriff's office and United. Boudreaux's allegations with respect to a conspiracy between United and the sheriff's office are conclusory and his summary judgment opposition points to no evidence of an agreement. Indeed, Boudreaux testified during his deposition that he did not have evidence of an agreement between United and the sheriff's office.[63]

At most, the summary judgment record shows that United and its board members sought to enforce United's right as a private entity to bar Boudreaux from entering its private property. To enforce those rights, United contacted the St. Martin Parish Sheriff's Office to inform them that (1) United had notified Boudreaux that he was barred from entering United's property, and (2) that, despite this notice, Boudreaux expressed his intent to attend United's January and February 2023 board meetings. Based on this information, the sheriff's office defendants barred Boudreaux from entering United's offices and, when he refused to leave, they arrested him. These facts do not amount to an agreement to commit an illegal act and thus do not convert United's actions as a private entity into state action— "[A] private party does not act under color of state

---

[62] *Id.* at ¶ 84.
[63] ECF No. 57-4 at 79 (Boudreaux Deposition).

11

law when she merely elicits but does not join in an exercise of official state authority."[64]  Here, Boudreaux points to no evidence that United or its board members knew about or participated in Boudreaux's detention in the parking lot of United's offices.

Moreover, "[p]olice reliance in making an arrest on information given by a private party does not make the private party a state actor," nor does "the fact that a private party executed a sworn complaint which forms the basis for an arrest.…"[65] Rather, to be deemed a state actor, "[t]he plaintiff must show that the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person merely because he was designated for arrest by the private party, without independent investigation."[66]While Boudreaux suggests the existence of such a plan in conclusory fashion in his complaint, the summary judgment record lacks evidence of a "preconceived plan" or that Sheriff Breaux and his deputies acted solely upon United's directives without independent investigation. In sum, Boudreaux has not demonstrated that United and the members of its board were state actors, nor has he come forward with evidence sufficient to create a triable issue that United or its board conspired with a state actor. Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to the § 1983 claims asserted against them. Those claims are dismissed.

**B.** __Section 1985 Claims__.

United and its board of directors next challenge Boudreaux's claims under 42 U.S.C. § 1985. Section 1985 prohibits conspiracies to, among other things: (1) prevent an official from carrying out his or her lawful duties; (2) interfere with a federal court proceeding or with a state court proceeding for the purpose of denying a citizen equal protection of law; or (3) deprive a

---

[64] *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir.1988) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 388 (5th Cir.1985).
[65] *Id.*
[66] *Id.*

person or class of persons of equal protection of law. Boudreaux does not allege that he is an official who was prevented from carrying out his duties or that he was prevented from participating in a court proceeding. Accordingly, it appears that Boudreaux is asserting a claim under § 1985(3). A claim under § 1985(3) must allege facts demonstrating: "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States."[67] The Fifth Circuit has held that an essential element of a § 1985(3) claim is proof that the conspiracy was driven by discriminatory animus based on race or membership in a protected class.[68] While Boudreaux's complaint alleges a conspiracy among United, United's board of directors, and the Saint Martin Parish Sheriff's Office, his complaint alleges no facts— and his summary judgment opposition points to no evidence—showing that this alleged conspiracy was motivated by race or Boudreaux's membership in a protected class. Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to Boudreaux's § 1985(3) claims. Those claims are dismissed.

## C. Section 1986 Claims.

United and its board members further challenge Boudreaux's claims under 42 U.S.C. § 1986. This provision provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent or aid ... neglects or refuses so to do ... shall be liable to the party injured." Having failed to demonstrate a claim under § 1985, Boudreaux cannot sustain a claim under § 1986.[69]

---

[67] *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 200 (5th Cir. 2020)(citing *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010)(per curiam)).

[68] *Welsh v. Correct Care Recovery Sols*., No. 19-10825, 2021 WL 487152, at *10 (5th Cir. Feb. 9, 2021); *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 112, 207 L. Ed. 2d 1052 (2020); *Angel v. La Joya Indep. Sch. Dist*., 717 F. App'x 372, 379 (5th Cir. 2017)(citing *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987)).

[69] *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Galloway v. State of La.,* 817 F.2d 1154, 1159 n. 2 (5th Cir.1987)).

Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to Boudreaux's § 1986 claims. Those claims are dismissed.

**D.  Louisiana State Law Claims.**

Finally, United and its board members challenge Boudreaux's state law claims for (1) violations of the Louisiana constitution; (2) false imprisonment, wrongful/retaliatory arrest, and wrongful detention; (3) intentional and/or negligent infliction of emotional distress; (4) negligence; (5) civil trespass and invasion of privacy; and (6) recovery of attorney's fees and punitive damages.

**1.  Violations of the Louisiana Constitution.**

United and its board members challenge Boudreaux's claims under "Louisiana Constitution article I, sections 2, 3, 4, 5, 6, 7, 9, and 13, all of which protect Louisiana citizens by guaranteeing rights to due process of law, individual dignity, property, privacy, freedom from intrusion, freedom of expression, to petition, and rights as an accused."[70] Boudreaux's claims under section 2 (due process), section 3 (discrimination based on a protected characteristic), section 5, section 6, and section 7 (the right to free speech) all implicate actions by state actors. For the same reasons previously addressed by the Court, Boudreaux has not come forward with evidence that creates a triable issue that United and its board members are state actors.

Moreover, Article I, section 4 of the Louisiana Constitution only applies to a private entity if that entity is "authorized by law to expropriate" private property. Nothing in the summary judgment record indicates that United or its board members exercise the power of imminent domain or the power to expropriate private property. Even if United had these powers, the conduct challenged by Boudreaux did not arise out of the exercise of these powers.

---

[70] ECF No. 1 at ¶ 112.

Finally article I, section 13 grants a criminal defendant "the right to counsel as well as the right to defend" him or herself in the event of arrest, detention, or criminal prosecution. Again, neither the complaint nor the opposition to summary judgment point to any facts showing that United or its board members violated Boudreaux's right to counsel in connection with a criminal proceeding. Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to Boudreaux's claims under Article I of the Louisiana Constitution. Those claims are dismissed.

### 2. False Imprisonment, Wrongful/Retaliatory Arrest, and Wrongful Detention.

United and its board members next challenge Boudreaux's false imprisonment, wrongful/retaliatory arrest, and wrongful detention claims. These claims appear to be grounded on the events of February 16, 2023 that culminated in Boudreaux's arrest in the parking lot of United's office by the sheriff's office defendants. Boudreaux, however, alleges no facts, nor does he point to any summary judgment evidence, that United or its board members directed or participated in Boudreaux's arrest, or that any United employee or board member was present during the arrest. In his complaint, Boudreaux alleges (on "information and belief") that "one or more members of the [United] Board contacted Sheriff Breaux and conspired with him to plan the arrest of the plaintiff at the meeting."[71] However, Boudreaux's opposition to the motions for summary judgment does not point to any evidence of an agreement between United and the sheriff's office defendants, nor does it identify the United employees or board members who allegedly conspired with Sheriff Breaux to "plan the arrest" of Boudreaux. The summary judgment record shows, at most, that United contacted the sheriff's office about Boudreaux's conduct during meetings and sought to enforce its right as a private entity to bar Boudreaux from entering its premises.

---

[71] *Id*. at ¶ 84.

Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to Boudreaux's wrongful/retaliatory arrest and wrongful detention claims. Those claims are dismissed.

### 3. Intentional and/or Negligent Infliction of Emotional Distress.

To prove a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[72] Extreme and outrageous conduct is that which goes "beyond all possible bounds of decency, [so as] to be regarded as atrocious and utterly intolerable in a civilized community."[73] Conduct that is simply tortious or illegal does not rise to the level of extreme and outrageous conduct; rather, it must cause distress so severe that no reasonable person could be expected to endure it.[74]

Louisiana also recognizes a claim for negligent infliction of emotional distress unaccompanied by physical injury, though not as an independent tort.[75] A plaintiff asserting negligent infliction of emotional distress must prove the elements of negligence, namely: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; (5) actual damages.[76] When a claim of negligent infliction

---

[72] *Deville v. Robinson*, 2013-832 (La. App. 3 Cir. 2/26/14), 132 So. 3d 1277, 1280-81 (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)).
[73] *Id.*
[74] *Id.*
[75] *Simmons v. State*, 2018-0174 (La. App. 4 Cir. 8/29/18), 255 So. 3d 701, 704-05, writ denied, 2018-1613 (La. 12/17/18), 259 So. 3d 345.
[76] *Id.*

of emotional distress is unaccompanied by physical injury, the plaintiff must prove that the defendant violated some legal duty to the plaintiff, exhibited outrageous conduct, and that there was an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[77] Recovery is generally limited to cases involving factual circumstances where the "defendant's conduct was declared outrageous because the defendant was found to have breached a special direct duty to the plaintiff and where the resulting mental distress the plaintiff suffered was easily associated with the defendant's conduct."[78]

In the present case, Boudreaux appears to base his intentional and negligent infliction of emotional distress claims on his interactions with the sheriff's office defendants and his ultimate arrest and detention on February 16, 2023. He alleges that the "conduct of the Defendants has caused Plaintiff to suffer mental anguish, fear, fright, intimidation, inconvenience, and the prospect of incurring legal debt for his criminal defense."[79] However, Boudreaux pleads no facts nor points to any evidence of extreme and outrageous conduct that exceeds "all possible bounds of decency, [so as] to be regarded as atrocious and utterly intolerable in a civilized community."[80] First, there is no evidence in the summary judgment record that United or its board members participated in Boudreaux's arrest and detention. Second, the summary judgment record does not reveal that the actions surrounding Boudreaux's arrest and detention rise to the level of extreme and outrageous conduct. Specifically, United had prohibited Boudreaux from entering its private property and sought to enforce its right to exclude him by initiating a trespass complaint. The sheriff's office defendants witnessed Boudreaux on United's property, ordered him to leave, and arrested him

---

[77] *Id.* at 705 (internal quotations and citations omitted).
[78] *Pelitire v. Rinker*, 18-501 (La. App. 5 Cir. 4/17/19), 270 So. 3d 817, 829 (citing *Covington v. Howard*, 49,135 (La. App. 2 Cir. 8/13/14), 146 So.3d 933, 937, writ denied, 14-1927 (La. 11/21/14), 160 So.3d 973) (internal quotations omitted).
[79] ECF No. 1 at ¶ 130.
[80] *Id.*

when he did not follow their instructions. There is no evidence in the summary judgment record that the sheriff's office defendants engaged in extreme or outrageous acts in connection with Boudreaux's arrest. As a matter of law, these facts do not support an intentional or negligent infliction of emotional distress claim. Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to Boudreaux's intentional or negligent infliction of emotional distress claims. Those claims are dismissed.

### 4. Negligence.

United and its board members next challenge Boudreaux's negligence clams. Under Louisiana law, a negligence claim requires proof that: (1) the defendant owed the plaintiff a duty to conform its conduct to a specific standard of care; (2) the defendant breached that standard of care; (3) this breach was a legal cause of the Plaintiffs' injuries; and (4) the plaintiff sustained actual damages.[81] Based on his complaint and summary judgment opposition, the factual basis for Boudreaux's negligence claims against United and its board members is unclear. At one point, Boudreaux complains about the quality of the water service provided by United.[82] But this is not a case grounded on water quality—it is grounded on Boudreaux's claims that he was denied access to United's board meetings and was arrested when he attempted to attend those meetings. Boudreaux's negligence claims also appear to be based, in part, on the same factual allegations supporting his intentional and negligent infliction of emotional distress claims. To the extent that Boudreaux's negligence claims are based on his infliction of emotional distress allegations, they fail for the same reasons explained above. Accordingly, the Court grants the Motions for Summary

---

[81] *Bufkin v. Felipe's Louisiana, LLC*, 171 So.3d 851 (La. 10/15/14).
[82] ECF No. 1 at ¶ 15; ECF No. 64 at 3. Boudreaux's opposition also includes, as exhibits, water quality citations and reports issued to United. *See, e.g.,* ECF Nos. 64-3, 64-4, 64-5.

Judgment filed by United and its board members with respect to Boudreaux's negligence claims. Those claims are dismissed.

### 5. Civil Trespass and Invasion of Privacy.

In Louisiana, an invasion-of-privacy claim provides a remedy for the damage suffered by the plaintiff when his or her legally protected right to privacy has been violated.[83] The right to privacy is defined in Louisiana as "the right to be let alone."[84] An invasion-of-privacy can be based on conduct that includes (1) the appropriation of an individual's name or likeness; (2) unreasonably intruding on the plaintiff's "physical solitude or seclusion;" (3) unreasonably casting a person "in a false light before the public;" and (4) the public disclosure of embarrassing private facts.[85] An action for civil trespass arises from an unlawful physical invasion of the property or possession of another.[86] A trespasser is "one who goes upon the property of another without the other's consent."[87] Damages are recoverable for "unconsented to activities performed on the property of another, based on physical property damage, invasion of privacy, inconvenience, and mental and physical suffering."[88] A person who directs or orders a trespass is liable for civil trespass even if they did not physically invade the plaintiff's property.[89]

In the present case, Boudreaux's trespass and invasion of privacy claims appear to be based on United's hand delivery of the letter to Boudreaux's residence informing him that he was prohibited from entering United's property and attending United's board meetings. With respect to an invasion-of-privacy claim, it appears that Boudreaux must be basing his claim on an allegation that United unreasonably intruded on his "physical solitude or seclusion" by hand

---

[83] *Tate v. Woman's Hosp. Found.*, 2010-0425 (La. 1/19/11), 56 So. 3d 194, 197.

[84] *Id.* (citing *Pack v. Wise*, 155 So.2d 909, 913 (La. App. 3rd Cir.1963), writ denied, 245 La. 84, 157 So.2d 231 (1963)).

[85] *Id.* (citing *Jaubert v. Crowley Post–Signal, Inc.,* 375 So.2d 1386 (La.1979)).

[86] *Gaspard v. St. Martin Parish Sewerage Dist. # 1*, 569 So.2d 1083 (La.App. 3 Cir.1990).

[87] *Pepper v. Triplet*, 03–619 (La.1/21/04), 864 So.2d 181, 197 (citations omitted).

[88] *Beacham v. Hardy Outdoor Advertising, Inc*., 520 So.2d 1086, 1091 (La.App. 2 Cir.1987).

[89] *Id.*

delivering the letter to his residence—the other three grounds for a claim do not fit the facts of the case. While the hand delivery of a letter to Boudreaux's front door may have arguably intruded on Boudreaux's "physical solitude or seclusion," that intrusion must also be unreasonable. Based on the facts shown in the summary judgment record, merely hand delivering a letter to Boudreaux's front door does not, as a matter of law, amount to an unreasonable intrusion. Boudreaux points to no other evidence showing conduct in connection with the hand delivery that would create a triable issue as to the reasonableness of United's intrusion.

Nor does the summary judgment record create a triable issue with respect to Boudreaux's trespass claim. While the record shows that United's employee entered Boudreaux's property to deliver the letter to Boudreaux at his front door, the actions of the employee did not amount to a trespass under Louisiana law. Specifically, the Louisiana Supreme Court has recognized "an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking."[90] Boudreaux points to no evidence of a sign or other warning that would prevent Trahan from approaching his front door. Accordingly, the Court grants the Motions for Summary Judgment filed by United and its board members with respect to Boudreaux's civil trespass and invasion-of-privacy claims. Those claims are dismissed.

### 6. Recovery of Attorney's Fees and Punitive Damages.

Because the Court has dismissed Boudreaux's substantive claims against United and its board members, Boudreaux cannot maintain independent claims for attorney's fees and punitive damages. Those claims are dismissed.

### IV.

---

[90] *State v. Deary*, 753 So.2d 200, 201 (La. 2000) (quoting *State v. Sanders*, 374 So.2d 1186, 1189 (La.1979)).

THE ST. MARTIN PARISH SHERIFF'S OFFICE DEFENDANTS

A. **Section 1983 Claims**.

    1. **First Amendment Claims.**

    The First Amendment to the United States Constitution prohibits the government from making laws that abridge "the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment is applicable to the states by virtue of the Fourteenth Amendment to the Constitution. Boudreaux alleges that he has a First Amendment right to attend and record public board meetings held at United's offices and to address United's board members during the meetings. Boudreaux alleges that the sheriff's office defendants violated his First Amendment rights by preventing him from attending United's board meetings and that they retaliated against him for attempting to exercise his First Amendment rights by unlawfully arresting and detaining him on United's property.

    "The scope of [a plaintiff's] First Amendment rights depends on the nature of the forum in which he seeks access."[91] Here, Boudreaux's First Amendment claims implicate speech on private property as opposed to speech occurring in a public forum. A public forum is a forum for speech provided by the government.[92] The government's treatment of speech in a public forum "may be constrained by the First Amendment, meaning that the government ordinarily may not exclude speech or speakers from the forum on the basis of viewpoint, or sometimes even on the basis of content."[93] In contrast, individuals generally do not have a First Amendment right to engage in

---

[91] *Imani v. City of Baton Rouge*, No. 17-439, 2022 WL 2760799 at *17 (M.D. La. July 14, 2022) (quoting *Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989)).
[92] *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 811–13 (2019).
[93] *Id.*

speech on the private property of others.[94] Even where "a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor."[95] In *Manhattan Cmty. Access Corp. v. Halleck*, a group of television producers brought a § 1983 action against a private, non-profit corporation licensed to operate a public access channel.[96] The plaintiffs claimed that the public access channel was a public forum, and that the corporate operator violated their First Amendment rights by suspending them from all public access channel services and facilities due to the content of a program they had submitted for airing.[97] While the Supreme Court noted that the defendant had created a forum for speech, the mere creation of that forum did not convert the defendant into a state actor subject to the constraints of the First Amendment:

> In short, merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints. If the rule were otherwise, all private property owners and private lessees who open their property for speech would be subject to First Amendment constraints and would lose the ability to exercise what they deem to be appropriate editorial discretion within that open forum…." The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use."[98]

Here, Boudreaux similarly alleges that "[United's] regular board meetings are a public forum" and that public comments during those meetings are "federally protected speech under the First Amendment of the U.S. Constitution."[99] However, under *Halleck*, the fact that United has opened its monthly board meetings to citizen participation does not mean that public speech during those meetings is protected by the First Amendment. As a private property owner, United could

---

[94] *Hudgens v. NLRB*, 424 U.S. 507, 520–21 (1976) (holding that picketers "did not have a First Amendment right to enter [a privately owned] shopping center for the purpose of advertising their strike").
[95] *Halleck*, 587 U.S. at 811–13.
[96] *Id.*
[97] *Id.*
[98] *Id.* at 812-813 (citing *Hudgens*, 424 U.S. at 519) (internal quotation marks omitted).
[99] ECF No. 1 at ¶ 13.

exercise "editorial discretion over speech and speakers on their property" by prohibiting Boudreaux from recording and disrupting board meetings and, ultimately, by barring Boudreaux from entering its property when Boudreaux refused to play by its rules. In short, based on the summary judgment record, Boudreaux had no First Amendment right to enter United's property and attend United's board meetings.

The difference between *Halleck* and the present case is the presence of the sheriff's office defendants. Unlike United and its board, these defendants are state actors. However, that does not change the result. Boudreaux is not complaining about speech restrictions adopted and enforced by the state on public property. Rather, he is complaining that the sheriff's office defendants enforced United's restrictions on his speech by arresting him for trespassing on United's private property. But as previously explained, Boudreaux had no First Amendment right to access United's property and attend its meetings.[100] Consequently, the sheriff's office defendants did not violate Boudreaux's First Amendment rights by merely acting on United's trespass complaint. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims under the First Amendment. Those claims are dismissed.

### 2. Fourth Amendment Claims.

To prevail on a § 1983 claim alleging false arrest/false imprisonment in violation of the Fourth Amendment, Boudreaux must show that the sheriff's office defendants lacked probable cause to detain and arrest him. "Probable cause exists when the totality of the facts and

---

[100] The protections of the First Amendment may apply to private property that has been devoted to a public use. *Cornelius*, 473 U.S. at 801 (1985) ("[A] speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment concerns."). But Boudreaux has not alleged facts or pointed to competent summary judgment evidence showing that United devoted its property to a public use. In contrast, the summary judgment record includes an affidavit from a United representative stating that United never dedicated its facilities to a public use. ECF No. 57-5 at ¶ 13. In short, merely opening its monthly board meetings to the public does not subject United to the constraints of the First Amendment.

circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[101] Here, the undisputed facts show that the arresting deputies had probable cause to detain and arrest Boudreaux for trespassing on United's private property. Specifically, United served a letter on Boudreaux stating that he was barred from entering its facilities and the sheriff's office was informed that Boudreaux was prohibited from entering the property. Louisiana's criminal trespass statute, La. Rev. Stat. 14:63, states that "[n]o person shall enter upon immovable property owned by another without express, legal, or implied authorization." La. Rev. Stat. 14:63.3, which criminalizes "remaining after being forbidden," states "[n]o person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any … immovable property, which belongs to another … or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing…." The summary judgment record shows that the arresting officers were aware that Boudreaux had been prohibited from entering or remaining on United's property and that they observed him on United's property.[102] The record also reflects that the arresting deputies warned Boudreaux to leave the property and arrested him when he did not comply.[103] Accordingly, Boudreaux's false arrest/detention claims fail as a matter of law because the arresting officers had probable cause to arrest Boudreaux.

Although it is unclear from Boudreaux's pleadings, some of his allegations could be construed as stating an excessive force claim. An excessive force claim under the Fourth Amendment requires proof that the plaintiff was seized, and that the plaintiff suffered (1) an injury that (2) resulted directly and only from the use of force that was "excessive to the need," and that

---

[101] *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004) (quoting *Glenn*, 242 F.3d at 313) (internal quotation marks omitted).
[102] ECF No. 1 at ¶¶ 51, 76-79.
[103] *Id.*

(3) the force used was objectively unreasonable.[104] The summary judgment record does not create triable issues with respect to the injury or excessive force prongs of a Fourth Amendment excessive force claim. To succeed on his excessive force claim Boudreaux must show that he has suffered "at least some injury."[105]  Boudreaux, however, concedes in deposition that he was not physically injured in connection with his arrest, nor is he claiming "psychological" damages.[106] Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims under the Fourth Amendment. Those claims are dismissed.

### 3. Fifth Amendment Claims.

With respect to his Fifth Amendment claims,[107] Boudreaux does not specifically identify which of the rights enumerated in the Fifth Amendment were allegedly violated by the sheriff's office defendants. Based on Boudreaux's complaint and his summary judgment opposition, his Fifth Amendment claims appear to be grounded on his right to due process under the Fifth Amendment and, conceivably, his right against self incrimination.[108]  In either case, Boudreaux's Fifth Amendment claims fail. Boudreaux's due process claims fail because the Due Process Clause of the Fifth Amendment applies only to *federal* actors.[109] Boudreaux's complaint makes no allegation that the sheriff's office defendants were federal actors at any relevant time. The right against self-incrimination applies to state actors by way of the Fourteenth Amendment.[110]

---

[104] *Graham v. Connor*, 490 U.S. 386, 388 (1989*); Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000).

[105] *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993).

[106] ECF No. 57-4 at 20-21 (Boudreaux Deposition).

[107] These are (1) the right to be indicted by a Grand Jury indictment prior to being held on a capital, or otherwise infamous, crime; (2) the right not to be put in jeopardy of life or limb for the same offense twice; (3) the right against self-incrimination, (4) the right not to be deprived of life, liberty, or property without due process, and (5) the right not to have property taken for public use without just compensation. U.S. Const. amend. V.

[108] The complaint contains no assertion that Boudreaux was held on a capital or infamous crime without having been indicted by a Grand Jury, that he was put in jeopardy twice for the same offense, or that any property belonging to him was taken for public use.

[109] *Ristow v. Hansen*, 719 F. App'x 359, 364 (5th Cir. 2018) (*citing Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)).

[110] *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492, 12 L. Ed. 2d 653 (1964).

25

Plaintiff alleges no facts showing that he was compelled to be a witness against himself in a criminal case. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims under the Fifth Amendment. Those claims are dismissed.

### 4. Fourteenth Amendment Claims.

The sheriff's office defendants next argue that Boudreaux has not alleged a viable claim under the Fourteenth Amendment of the Constitution. The protections embodied in the Fourteenth Amendment include substantive and procedural due process under the Due Process Clause, equal protection of the law under the Equal Protection Clause, as well as individual rights from the first nine amendments incorporated to apply to the states under the Due Process Clause. Like his other constitutional claims, Boudreaux merely cites the Fourteenth Amendment without identifying which specific protections of the amendment are the legal basis for his claim. Boudreaux's complaint contains no allegations that can be fairly construed to state a claim under the Equal Protection Clause. The threshold showing for an equal protection claim is that "two or more classifications of similarly situated persons were treated differently."[111] Boudreaux's complaint contains no such allegation, nor does his summary judgment opposition point to evidence supporting an equal protection claim.

Furthermore, Boudreaux's allegations of wrongful/retaliatory arrest, false imprisonment, and wrongful detention do not state a claim under either the substantive or procedural due process prongs of the Due Process Clause. If the conduct alleged falls within the scope of a specific guarantee provided in one the first ten amendments that make up the Bill of Rights, and the guarantee has been incorporated to apply to the states, then "that Amendment, not the more

---

[111] *Duarte v. City of Louisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (citing *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)).

generalized notion of 'substantive due process,' must be the guide for analyzing these claims."[112] Claims for false arrest and false imprisonment—both before and after legal process—arise under the Fourth Amendment rather than the more general guarantees of the Fourteenth Amendment's Due Process Clause. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims under the Fourteenth Amendment. Those claims are dismissed.

### B. **Section 1985 and 1986 Claims**.

Boudreaux's § 1985(3) and § 1986 claims against Sheriff Breaux and the sheriff's deputy defendants suffers from the same fatal flaw as the § 1985(3) and § 1986 claims asserted against United and its board members. Specifically, while Boudreaux's complaint alleges a conspiracy among United, United's board of directors, and the St. Martin Parish Sheriff's Office, his complaint alleges no facts—and his summary judgment opposition points to no evidence—showing that this alleged conspiracy was motivated by race or Boudreaux's membership in a protected class. Moreover, because Boudreaux cannot sustain a claim under § 1985(3), he cannot sustain a claim under § 1986.[113] Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's § 1985(3) and § 1986 claims. Those claims are dismissed.

### C. *Monell* **Claims**

Although he does not expressly assert a *Monell* claim, Boudreaux's complaint includes allegations that appear to be an attempt to state a *Monell* claim. A municipality may be independently liable under *Monell v. Dep't of Soc. Servs.*, for unconstitutional conduct that

---

[112] *Albright v. Oliver*, 510 US 1215 (1994) (quoting *Graham v. Connor*, 490 US 386, 395 (1989)).
[113] *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Galloway v. State of La.,* 817 F.2d 1154, 1159 n. 2 (5th Cir.1987)).

"implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[114] In other words, the unconstitutional conduct at issue must be directly attributable to the municipality through some sort of official action. A § 1983 *Monell* claim requires proof that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right.[115] Official policies may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."[116] To prove a *Monell* claim on the basis of a wide-spread practice, a plaintiff must establish, with evidence, "sufficiently numerous prior incidents," as opposed to "isolated instances."[117] A plaintiff "must do more than describe the incident that gave rise to his injury."[118] Rather, he must show incidents similar to the conduct at issue in the instant case—that is, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[119]

Here, Boudreaux alleges that "[t]he actions of Defendants as alleged herein reflect a custom and unspoken policy within the St. Martin Parish Sheriff's Office of intentional, wanton and reckless disregard for the constitutional rights of and contempt for those who opposed the Board of the United Water System."[120] Boudreaux further alleges that the sheriff's office defendants'

> [A]ctions, inactions, omissions, and intentional conduct combined with that of the UWS Defendants, in collusion with one another and SHERIFF BREAUX himself reflect the custom and policy of the SMPSO at the time of Plaintiff's arrest and the events giving rise to this Complaint evidence a custom, culture, and practice within the Sheriff's office of the use of illegal, unethical, and unsavory means to intimidate

---

[114] 436 U.S. 658, 690 (1978).

[115] *Blanchard-Daigle v. Geers,* No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).

[116] *Id.*

[117] *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir.1989).

[118] *Ratliff v. Aransas Cty., Texas,* 948 F.3d 281, 285 (5th Cir. 2020).

[119] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[120] ECF No. 1 at ¶ 95.

citizens from exercising their constitutional rights to confront and oppose elected officials or to petition their government for redress under the First Amendment.[121]

The *Monell* allegations in Boudreaux's complaint are conclusory and his summary judgment opposition does not point to any evidence supporting his policy and pattern allegations. Instead, the opposition focuses almost solely on the events of January and February 2023 that culminated in Boudreaux's arrest. In contrast, although sparse, the sheriff's office defendants include an affidavit stating that the office has policies in place intended to protect the First Amendment rights of citizens.[122]

A plaintiff may point to prior occurrences of constitutional violations to plead a *Monell* claim against a municipality. Those prior occurrences, however, must be not only similar to conduct at issue in the plaintiff's case, but also persistent as opposed to sporadic or isolated.[123] This persistency requirement ensures that the alleged pattern of unconstitutional actions by municipal officers is based on conduct that has "occurred for so long and with such frequency that the course of conduct demonstrates the [municipality's] knowledge and acceptance of the disputed conduct."[124] Again, however, neither the complaint nor the summary judgment opposition filed by Boudreaux point to evidence of a pattern of conduct that is persistent. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's *Monell* claims. Those claims are dismissed.

---

[121] *Id.* at ¶ 96.
[122] ECF No. 59-5.
[123] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).
[124] *Id.*

D. **Louisiana State Law Claims**.

Finally, the sheriff's office defendants challenge Boudreaux's state law claims for (1) violations of the Louisiana constitution; (2) false imprisonment, wrongful/retaliatory arrest, and wrongful detention; (3) intentional and/or negligent infliction of emotional distress; (4) negligence; (5) civil trespass and invasion of privacy; and (6) recovery of attorney's fees and punitive damages.

1. **Violations of the Louisiana Constitution.**

The sheriff's office defendants challenge Boudreaux's claims under "Louisiana Constitution article I, sections 2, 3, 4, 5, 6, 7, 9, and 13, all of which protect Louisiana citizens by guaranteeing rights to due process of law, individual dignity, property, privacy, freedom from intrusion, freedom of expression, to petition, and rights as an accused."[125] Boudreaux's claims under Article I, section 2 (due process), section 3 (equal protection), section 5 (searches and seizures), section 7 (freedom of expression), and section 9 (right to assemble and petition government) are all duplicative of the federal constitutional claims addressed above. For the same reasons explained above, the summary judgment record does not reflect any triable issues as to these claims.

Article I, section 4 of the Louisiana Constitution broadly provides that "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property." The basis of Boudreaux's section 4 claim is not clear from his complaint or his summary judgment opposition. His allegations may be construed as a claim that he has a property right to attend United's board meetings by virtue of his status as a member of the water system but he points to no provisions in United's by-laws, member contracts, or other documents that grant Boudreaux a property interest in attending United board meetings or that support a broad right to record those

---

[125] ECF No. 1 at ¶ 112.

30

meetings. As far as Boudreaux's arrest and detention on *United's* private property, the facts reflected in the summary judgment do not create a triable issue as to whether the sheriff's office defendants violated Boudreaux's right to the use and enjoyment of his property. The other provisions of section 4 relate primarily to eminent domain and other special cases that do not apply to the facts of the present case.

Moreover, Article I, section 4 of the Louisiana Constitution only applies to a private entity if that entity is "authorized by law to expropriate" private property. Nothing in the summary judgment record indicates that that the St. Martin Parish Sheriff's Office exercises the power of imminent domain or the power to expropriate private property. Even if it had these powers, the conduct challenged by Boudreaux did not arise out of the exercise of these powers.

Article I, section 6 provides that "[n]o person shall be quartered in any house without the consent of the owner or lawful occupant." Boudreaux alleges no factual basis for a claim under this provision. Finally, Article I, section 13 grants a criminal defendant "the right to counsel as well as the right to defend" him or herself in the event of arrest, detention, or criminal prosecution. Neither the complaint nor the opposition to summary judgment point to any facts showing that the sheriff's office defendants violated Boudreaux's right to counsel in connection with a criminal proceeding. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims under Article I of the Louisiana Constitution. Those claims are dismissed.

### 2. False Imprisonment, Wrongful/Retaliatory Arrest, and Wrongful Detention.

The sheriff's office defendants next challenge Boudreaux's Louisiana false imprisonment, wrongful/retaliatory arrest, and wrongful detention claims. The tort of false arrest and imprisonment occurs when one arrests and restrains another against his will without a warrant or

other statutory authority.[126] The two essential elements are: (1) detention of a person; and (2) the unlawfulness of such detention.[127] Here, there is no dispute that Boudreaux was detained at United's office. However, as explained above, the arresting officers had probable cause to arrest Boudreaux for criminal trespass and remaining after being forbidden and, as a result, his arrest and detention were lawful. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims for false imprisonment, wrongful/retaliatory arrest, and wrongful detention. Those claims are dismissed.

### 3. Intentional and/or Negligent Infliction of Emotional Distress.

The sheriff's office defendants next challenge Boudreaux's claims for intentional or negligent infliction of emotional distress. As discussed above, the summary judgment record does not reveal that the actions surrounding Boudreaux's arrest and detention rise to the level of extreme and outrageous conduct that exceeds "all possible bounds of decency, [so as] to be regarded as atrocious and utterly intolerable in a civilized community."[128] United prohibited Boudreaux from entering its private property and sought to enforce its right to exclude by initiating a trespass complaint. The sheriff's office defendants witnessed Boudreaux on United's property, ordered him to leave, and arrested him when he did not follow their instructions. There is no evidence in the summary judgment record that the sheriff's office defendants engaged in extreme or outrageous acts in connection with Boudreaux's arrest. As a matter of law, these facts do not support an intentional or negligent infliction of emotional distress claim. Accordingly, the Court grants the

---

[126] *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977); *Harrison v. Phillips*, 539 So.2d 911 (La. App. 4th Cir. 1989), writ denied, 541 So.2d 894 (La. 1989).
[127] *Touchton v. Kroger Company*, 512 So.2d 520 (La. App. 3rd Cir.1987); *O'Conner v. Hammond Police Dept.*, 439 So.2d 558 (La. App. 1st Cir.1983).
[128] *Id.*

Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's claims for intentional or negligent infliction of emotional distress. Those claims are dismissed.

### 4. Negligence.

The sheriff's office defendants next challenge Boudreaux's negligence clams. Those claims appear to be based, in part, on a negligent training or supervision theory.[129] If so, these claims implicate Louisiana's discretionary immunity statute.[130] La. Rev. Stat. § 9:2798.1(B) provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." This provision does not apply "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[131] In *Roberts v. City of Shreveport*, the Fifth Circuit explained that

> Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy.[132]

Applying this discretionary function test, state and federal courts have held that Louisiana's discretionary immunity statute immunizes officers from state-law negligent training, hiring, supervision, and retention claims.[133]

---

[129] *See, e.g.,* ECF No. 1 at ¶ 95 (alleging that Sheriff Breaux had a duty to adequately train and supervise his officers and the sheriff's office defendant violated their training).

[130] *Roberts v. City of Shreveport*, 397 F.3d 287, 298 (5th Cir. 2005).

[131] La. Rev. Stat. 9:2798.1(C).

[132] *Roberts*, 397 F.3d 287 at 298.

[133] *See id.* (La. Rev. Stat. 9:2798.1(B) renders police chief immune from state-law claims premised on his "training officers under his command"); *Smith v. Lafayette Parish Sheriff's Dep't*, 874 So. 2d 863, 868 (La. App. 3 Cir. 2004)

Even if this state law immunity does not apply to the sheriff's office with respect to training and supervision, Boudreaux's complaint alleges few facts supporting his negligent training and supervision claims. The complaint alleges in detail the incidents in January and February 2023 that culminated in Boudreaux's arrest.[134] However, the Complaint does not allege facts explaining how the St. Martin Parish Sheriff's Office training program or any actions by Sheriff Breaux or the other sheriff's office defendants support Boudreaux's claims that they were negligent as far as training and supervision. Boudreaux's training and supervision allegations in the complaint are largely conclusory and he does not point to any evidence in his summary judgment opposition to support his claims. Based on the complaint and his opposition, Boudreaux's negligent training and supervision claims fall squarely within Louisiana's discretionary immunity statute because they implicate duties that are not prescribed by law or regulation but are instead grounded in policy considerations.[135]

To the extent that Boudreaux's negligence claims against the sheriff's office defendants are based on the same allegations as his negligent infliction of emotional distress claims, his negligence claims fail for the same reasons. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's negligence claims. Those claims are dismissed.

---

(sheriff's "hiring/retention policy was a discretionary act" for purposes of immunity under La. Rev. Stat. 9:2798.1); *Hoffpauir v. Columbia Cas. Co.*, No. 12-403, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013) ("[T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321 (M.D. La. 2021) (sheriff's "duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations").

[134] ECF No. 1 at ¶¶ 72-77.

[135] *Roberts*, 397 F.3d 287 at 298.

### 5. Civil Trespass and Invasion of Privacy.

In Louisiana, an invasion-of-privacy claim provides a remedy for the damage suffered by the plaintiff when his or her legally protected right to privacy has been violated.[136] The right to privacy is defined in Louisiana as "the right to be let alone."[137] An invasion-of-privacy can be based on conduct that includes (1) the appropriation of an individual's name or likeness; (2) unreasonably intruding on the plaintiff's "physical solitude or seclusion;" (3) unreasonably casting a person "in a false light before the public;" and (4) the public disclosure of embarrassing private facts.[138] An action for civil trespass arises from an unlawful physical invasion of the property or possession of another.[139] A trespasser is "one who goes upon the property of another without the other's consent."[140] Damages are recoverable for "unconsented to activities performed on the property of another, based on physical property damage, invasion of privacy, inconvenience, and mental and physical suffering."[141] A person who directs or orders a trespass is liable for civil trespass even if they did not physically invade the plaintiff's property.[142]

In the present case, Boudreaux's trespass and invasion of privacy claims against the sheriff's office defendants appear to be based on *United's* hand delivery of the January 10th letter to Boudreaux's residence informing him that he was prohibited from entering United's property and attending United's board meetings. With respect to an invasion-of-privacy claim, it appears that Boudreaux must be basing his claim on an allegation that United unreasonably intruded on his "physical solitude or seclusion" by hand delivering the letter to his residence—the other three grounds for a claim do not fit the facts of the case. In either case, Boudreaux does not allege facts

---

[136] *Tate v. Woman's Hosp. Found.*, 2010-0425 (La. 1/19/11), 56 So. 3d 194, 197.

[137] *Id.* (citing *Pack v. Wise*, 155 So.2d 909, 913 (La. App. 3rd Cir.1963), writ denied, 245 La. 84, 157 So.2d 231 (1963)).

[138] *Id.* (citing *Jaubert v. Crowley Post–Signal, Inc.,* 375 So.2d 1386 (La.1979)).

[139] *Gaspard v. St. Martin Parish Sewerage Dist. # 1*, 569 So.2d 1083 (La.App. 3 Cir.1990).

[140] *Pepper v. Triplet*, 03–619 (La.1/21/04), 864 So.2d 181, 197 (citations omitted).

[141] *Beacham v. Hardy Outdoor Advertising, Inc*., 520 So.2d 1086, 1091 (La.App. 2 Cir.1987).

[142] *Id.*

or point to evidence showing any actions by the sheriff's office defendants in connection with the hand delivery of the letter to Boudreaux's front door. As far as the conduct of the sheriff's office defendants in connection with Boudreaux's arrest and detention, those actions took place on the private property of *United,* and the summary judgment record does not reveal any grounds for Boudreaux to claim a privacy interest while standing on United's property. To the extent that Boudreaux bases this claim against the sheriff's office defendants on his allegations of a conspiracy between United and the sheriff's office, as explained above, Boudreaux has not alleged facts nor pointed to evidence in the summary judgment record that creates a triable issue as to the presence of an agreement between United and the sheriff's office. Accordingly, the Court grants the Motion for Summary Judgment filed by the sheriff's office defendants with respect to Boudreaux's civil trespass and invasion-of-privacy claims. Those claims are dismissed.

### 6. Recovery of Attorney's Fees and Punitive Damages.

Because the Court has dismissed Boudreaux's substantive claims against the sheriff's office defendants, Boudreaux cannot maintain independent claims for attorney's fees and punitive damages. Those claims are dismissed.

### V.
### CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Summary Judgment filed by defendants United Water System, Inc. and Joseph Trahan [ECF No. 57]; the Motion for Summary Judgment filed by individual members of United Water System's Board of Directors named as defendants [ECF No. 62]; and the Motion for Summary Judgment filed by defendants St. Martin Parish Sheriff Beckett Breaux, Deputy Claygus Herring, Captain Carol Knott, Corporal Douglas Heaton, Deputy Clayton Alexander, Jr., and Deputy Kiland Carmouche  [ECF No. 59]. All of plaintiff's federal and state claims are DISMISSED WITH PREJUDICE.

A separate judgment in conjunction with these reasons has this date been entered into the record of this proceeding.

THUS DONE in Chambers on this **23rd day of June, 2025**.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE